Myers, J.
 

 We have for decision the question of whether the testimony of the plaintiff constituted a waiver which would permit admission of a physician’s testimony, otherwise privileged under Section 11494, General Code, reading in part as follows:
 

 “The following persons shall not testify in certain respects:
 

 “An attorney, concerning a communication made to
 
 *5
 
 Mm by Ms client in that relation, or his advice to his client; or a physician, concermng a communication made to. him by his patient in that relation, or his advice to Ms patient. But the attorney or the physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject.”
 

 The Court of Common Pleas ruled the testimony of Dr. Harry Pusselman inadmissible while the Court of Appeals held contrary.
 

 There is no claim that express consent was given by the plaintiff for Dr. Pusselman to testify. That element of the statute may, therefore, at the outset be excluded from consideration. That leaves only the question of a possible waiver.
 

 The “subjects” privileged under the statute are “communications” and “advice.” The relationship between physician and patient is protected and privileged under the law, not for the benefit of the physician but solely for the patient. Since there was no express consent in the instant case, the lips of Dr. Pusselman were sealed under the law unless the plaintiff voluntarily testified respecting any communications or advice from the physician.
 

 We have, therefore, the direct question whether Harpman, the plaintiff, voluntarily testified respecting any relationsMp with Dr. Pusselman that could fall within the purview of “communications” or “advice.”
 

 The only testimony the plaintiff gave respecting Dr. Pusselman is to be found in his answers on cross-examination in response to questions by counsel for defendant. Is such testimony voluntary within the mearnng of the statute? Is it something brought forth “voluntarily” by the plaintiff? He was obliged to answer the questions whether he desired to or not. Whatever was developed respecting Dr. Pusselman in cross-examination was brought out by the defendant.
 
 *6
 
 In that cross-examination of the plaintiff, it was counsel for defendant who directed the course of the inquiry. It was counsel for defendant who propounded the subjects of the questions which plaintiff was obliged to answer. The plaintiff had no choice about the matter. He was obliged to answer or be in contempt of court. Obviously, in such a situation the plaintiff did not “voluntarily” testify respecting any “communications” or “advice” from Dr. Fusselman. There was no waiver in the testimony on cross-examination. See
 
 Larson
 
 v.
 
 State,
 
 92 Neb., 24, 137 N. W., 894;
 
 Walmer-Roberts
 
 v.
 
 Hennessey,
 
 191 Iowa, 86, 181 N. W., 798;
 
 Packard, Admx.,
 
 v.
 
 Coberly,
 
 147 Wash., 345, 265 P., 1082; and
 
 Brayman
 
 v.
 
 Russell & Pugh Lumber Co.,
 
 31 Idaho, 140, 169 P., 932.
 

 In 5 Jones on Evidence, 4191, we find the following:
 

 “Furthermore, it is' held that the testimony of the plaintiff on cross-examination as to communications made to his physician is not voluntary in such sense as to constitute a waiver of his privilege. ’ ’
 

 But the claim of the defendant does not end here. Defendant maintains that when plaintiff, in his direct examination which was voluntary, testified that his health before the time of the accident was good, he thereby testified on a “subject” under the statute in such a manner as to permit the defendant to introduce testimony respecting his health during that period, including the communications, advice and treatment of plaintiff by Dr. Fusselman. It is asserted that when plaintiff testified that his health was good he thereby “opened the door” and waived the privilege accorded bim by the statute. It is claimed that health is a subject that is not only a general term but necessarily includes communications and advice especially in the case at bar. While there is much force in such an argument, such an interpretation would render the statute useless and ineffective in every ease where the plaintiff or patient has testified generally respecting his health.
 
 *7
 
 One weakness of snch an argument is illustrated by the manner in wbicb counsel for defendant in the beginning of his brief states the question at issue. He says: “The only question in this case for the consideration of the court is: ‘If the plaintiff in a personal injury suit, voluntarily testifies generally as to his good physical condition at the time of the accident and prior thereto, can he, through his attorney, claim that the testimony of a physician who treated him for an ailment,
 
 not loathsome,
 
 for a period of six months or more before the accident, is privileged, by virtue of Section 11494 of the General Code?” (Italics ours.) While the issue is more accurately stated later in his brief, counsel for defendant would apparently make a distinction between an ailment which is loathsome and one not so, as in the instant case. But the statute makes no such distinction. The statute is not concerned with any particular kind of ailment, whether loathsome or otherwise, but rather the confidential relationship between physician and patient. The statute limits the “subject” to the relationship in language as follows: “Or a physician concerning a communication made to him by his patient,
 
 in that relation,
 
 or his advice to his patient.” (Italics ours.) In other words, what the patient has' said to his physician and what the physician has said to the patient is closed to the outside world unless the patient first voluntarily testifies in respect thereto or gives express consent to its revealment. Upon broad grounds of public policy that appears to be the intendment of the statute.
 

 The underlying reasons for the statutes on privileged communications were very well expressed by Justice Pitney in the ease of
 
 Arizona & New Mexico Ry. Co.
 
 v.
 
 Clark,
 
 235 U. S., 669, 676, 59 L. Ed., 415, 35 S. Ct., 210, as follows: “The express object is to exclude the physician’s' testimony, at the patient’s option, respecting knowledge gained at the bedside, in view of the very delicate and confidential nature of the
 
 *8
 
 relation between tbe parties. Tbe statute recognizes that they do not stand on equal terms. Tbe patient is more or less suffering from pain or weakness, distracted by it, ignorant of tbe nature or extent of bis injury or illness, driven by necessity to call in a professional adviser, sometimes with little freedom of choice; be relies, perforce, upon tbe physician’s discretion, as well as upon bis skill and experience, and is obliged by tbe circumstances of bis own condition not only to make an explanation of bis ailment or injury, so far as it may be within bis knowledge and may be communicable by word of mouth, but also to submit to the more intimate disclosure involved in a physical examination of bis person. Tbe physician, on tbe other band, is in tbe full possession of bis faculties, and of that knowledge which is power. Manifestly, tbe patient occupies, for tbe time, a dependent position. Tbe chief policy of the statute, as we regard it, is to entourage full and frank disclosures to tbe medical adviser, by relieving tbe patient from tbe fear of embarrassing consequences. Tbe question of dealing justly as between tbe patient and third parties is a secondary consideration.”
 

 In bis direct testimony, being bis voluntary testimony, tbe plaintiff did not even mention Dr. Fusselman, let alone any “communications” or “advice” from tbe physician. ' In 5 Jones on Evidence, 4190, tbe rule is stated as follows: “It is held not a waiver for a party to testify in general terms as to bis physical condition or state of health or tbe nature of bis injuries.” Plaintiff did not voluntarily testify concerning any relationship with Dr. Fusselman. Not having voluntarily testified respecting any “communications” or “advice” from Dr. Fusselman, there was no waiver under tbe statute.
 

 Although for tbe purpose of construction we have referred to tbe underlying reasons for tbe statute, we are not here concerned with tbe wisdom of its enact
 
 *9
 
 ment. That is for the Legislature. If the. intention had been to include both direct and cross-examination it would have been easy for the Legislature to have left out the word “voluntarily” and to have made the statute read: “But if the patient testifies.” Having used the word “voluntarily” fin the statute, we are obliged to give it the usually accepted meaning.
 

 Two cases relating to communications between attorney and client decided by this court and relied upon by defendant are
 
 King
 
 v.
 
 Barrett,
 
 11 Ohio St., 261, and
 
 Spitzer
 
 v.
 
 Stillings, Exr.,
 
 109 Ohio St., 297, 142 N. E., 365. These two eases are distinguishable from the case at bar. The privilege between physician and patient may be waived but the waiver must be distinct and unequivocal. We do not find such a waiver in the case at bar. While statutes in other jurisdictions aré" not in all respects like the Ohio statute, nevertheless the principle regarding a waiver is practically the same. Unless there is either an express consent or unless the patient voluntarily testifies in respect to communications or treatment by the physician the latter will not be permitted to testify. In the instant case the information respecting Dr. Fusselman was elicited from the plaintiff on cross-examination. Such testimony was not voluntary within the purview of the statute. There was, therefore, no waiver of the privilege conferred by Section 11494, General Code. When Dr. Fusselman answered “I don’t know as I have permission to give that. It is under privileged communications,” the trial court under the circumstances properly ruled his testimony could not be given without express consent of the plaintiff.
 

 Judgment of the Court of Appeals' reversed and
 
 s
 
 that of Court of Common Pleas affirmed.
 

 Matthias, Day and Williams, JJ., concur.
 

 Weygandt, C. J., and Zimmerman, J., dissent.
 

 Gorman, J., not participating.