Myebs, J.
 

 The principal question for decision is whether the testimony of-the plaintiff, Victor Baker, on direct examination constituted a waiver which would permit the admission of a physician’s testimony otherwise privileged under Section 11494, General Code. That section reads in part as follows:
 

 “The following persons shall not testify in certain respects:
 

 “An attorney, concerning a communication made to him by his client in that relation, or his advice to his client; or a physician, concerning a communication made to him by his patient in that relation, or his advice to his patient. But the attorney or physician may testify by express consent of the client or patient; and if the client or patient voluntarily testifies, the attorney or physician may be compelled to testify on the same subject
 
 * *
 

 On August 30, 1928, plaintiff sustained an injury when his right leg was caught between two coal cars resulting in contusions and abrasions below the knee. For such injuries compensation was paid to him by the Industrial Commission until November 4, 1934, but denied thereafter. Plaintiff’s right leg was subject to open sores, swelling and a scabby condition. It
 
 *493
 
 was the contention of defendant, the Industrial Commission, that this "condition was not the result of the injury originally sustained by plaintiff in 1928. The immediate question is whether there was prejudicial error in the admission of certain testimony claimed to be privileged.
 

 The fact that the Court of Appeals reversed the judgment of the Court of Common Pleas on authority of
 
 Harpman
 
 v.
 
 Devine, Recr.,
 
 133 Ohio St., 1, 10 N. E. (2d), 776, 114 A. L. R., 789, necessitates a comparison of the testimony of the plaintiff in that case with the circumstances and evidence in the instant case.
 

 In
 
 Harpman
 
 v.
 
 Devine,
 
 supra, the plaintiff in his direct testimony did not mention Dr. Fusselman, the physician whose testimony was sought to be introduced. In the instant case the plaintiff, in his direct examination, named Dr. Phillips, the skin specialist, whose testimony was sought to be introduced. The-plaintiff said thgt he had been sent to Dr. Phillips for treatments. That information was volunteered.
 

 In
 
 Harpman
 
 v.
 
 Devine,
 
 the plaintiff in his direct examination did not specifically testify in respect to any particular disease or injury before the accident. The only voluntary testimony in that respect was as follows:
 

 “Q. Will you just tell us what your general physical condition has been previous to July, 1934? A. Why, I have been good; it was good, I should say.” '
 

 In the instant case the plaintiff in his direct, that is voluntary, examination testified in detail in respect to the subject under inquiry as follows:
 

 “Q. Prior to this injury you had in August, 1928, to your right leg, had you ever had any sores of any land on your right-leg? A. No, sir.
 

 ‘ ‘ Q. Ever had any scaly condition of your right leg? A. No, sir, no scaly place on my body any place. Never had a thing like a boil.”
 

 Here the plaintiff voluntarily testified
 
 in detail
 
 
 *494
 
 about the
 
 subject
 
 in issue, the specific condition of his leg before the injury, and the physician was therefore authorized under the statute to testify in respect to that same subject.
 

 Much has been said and written in regard to the scope of the term “subject” as used in the statute. In
 
 Harpman
 
 v.
 
 Devine
 
 it was urged by the defendant that when the plaintiff testified that his health was good prior to the accident, the door was thereby opened to permit the defendant to introduce the testimony of any physician who may have treated the plaintiff prior to the accident. To support such a contention in the realm of medicine or in the realm of law would be to contend either that not more than’ one medical subject could be comprised in the word “health” or that the word “health,” once mentioned by a patient as good, opened the door for testimony by his physician on any or all diseases which the patient may have had. The word “health” is too general to open the door. When a patient goes to a skin specialist, as did the plaintiff in the instant case, he does not go to find out whether his health is good or bad. He knows that already. That was' not the
 
 subject
 
 concerning which the plaintiff went to see the physician. The subject was the sore and scabby condition of his right leg concerning which he voluntarily testified in detail.
 

 If the patient testifies about one particular injury or disease, the physician may also testify on that one subject, but no other. To declare that all diseases of the patient prior to such injury or disease could be shown would be to contend also that where a client had testified in respect to his attorney in one particular lawsuit, his attorney could thereby under the statute testify not only in respect to that particular lawsuit but also in respect to any and all other litigation which the attorney might have conducted for the client. Of course, that is not what is meant by the statute; nor was such a broad principle upheld by this court in
 
 *495
 

 King
 
 v.
 
 Barrett,
 
 11 Ohio St., 261, or
 
 Spitzer
 
 v.
 
 Stillings, Exr.,
 
 109 Ohio St., 297, 142 N. E., 365. There are different diseases and subjects in the realm of medicine just as there are different subjects and lawsuits in the realm of law.
 

 A client may have consulted a number of different attorneys over a period of years respecting various cases in court. If such a witness were to testify in court that he had never had any litigation, could any one or all of the attorneys be called into court and made to testify specifically in regard to any privileged communication in any one case in order to prove that the client had had litigation in court? Certainly not. In such a case there would be no waiver of the statute regarding any particular communication made to an attorney respecting any one case in court. There are other ways of proving that a person has had litigation, just as there are other ways of proving whether a person has had good or bad health without resorting to privileged communications. But if the client has testified specifically regarding any one document or any one case in court involving an attorney, as was the situation in -the
 
 King
 
 and
 
 Spitzer cases, supra,
 
 then, of course, the attorney would also be permitted to testify in respect to that s'ame document or case but no other. While we are not here concerned with the relationship of attorney and client, we have made the foregoing observations for the reason that the
 
 King
 
 and
 
 Spitser cases, supra,
 
 have been cited and urged as examples of absolute waivers applicable to medical cases where the patient has testified generally in respect to his health. Those two cases were concerned with the relationship of attorney and client and involved only one kind of communication, that is oral, and are therefore not necessarily a true test under all conditions for the relationship between physician and patient where communications may be of two different kinds.
 

 
 *496
 
 Privileged- communications between patient and physician may be either (1) by exhibition of the body to a physician for examination or treatment, or (2) oral or written communications between patient and physician. For m'anifest reasons the statute protects the patient in respect to both kinds. What the physician learns by exhibition of the body of the patient is sealed to the public and may not be testified to by the physician unless the patient has given express consent or has voluntarily testified on that subject.
 
 Ausdenmoore et al., Exrs.,
 
 v.
 
 Holzback,
 
 89 Ohio St., 381, 106 N. E., 41. In respect to oral communications, a patient when ill may be delirious or physically and mentally weak and, in that condition, talk about subjects and reveal secrets which in a normal condition he would not do. In regard to any such communication the patient is at a decided disadvantage and is, therefore, in that respect, also protected by the statute. The reason for protecting: such oral communications against revealment without express consent or waiver is much more compelling than mere protection against the physician testifying about the condition or ailment of the patient. The reason is also more compelling than in the relationship of attorney and client, where the latter is1 in full possession of his mental faculties. The patient, when making oral communications’, may have been so ill and delirious that he was mentally irresponsible. The very communication or statement made might be false by reason of his illness and irresponsible condition. It would be utterly unfair to permit a physician to repeat such delirious statements to a jury unless the patient had given his express consent or had specifically testified in respect thereto.
 

 One principle deeply imbedded in our American system of jurisprudence is that whenever a person by reason of mental incapacity is unable to- protect his rights, the law comes to his rescue. When the rights of youth, the insane, the feeble-minded or those tern
 
 *497
 
 porarily incompetent for one reason or another are opposed by the superior mentality and will power of those not under disability, the former are shielded and protected by the law. Within this category is to be found the statute here under consideration in its application to the relationship of physician and patient. This
 
 defensive
 
 feature of the statute is perhaps just as important as is' the protection against revealment of details regarding any particular disease.
 

 It is well known that the modern physician, when undertaking to diagnose a difficult case, requires and usually receives a complete medical history of the patient, including any and all diseases which the patient may have had. The statute protects' and seals such confidential and intimate communications of the patient against intrusion by the outside world, unless the patient gives his express consent to their revealment or testifies in respect thereto. Let it be repeated here what was said in
 
 Harpman
 
 v.
 
 Devine, supra,
 
 to wit:. That we are not here concerned with the wisdom of the statute. That is for the legislative branch of the government. The authorities on the subject are rather voluminous for review in this discussion, but may be found in 114 A. L. R., 798, where the general rule is stated as follows:
 

 “It is generally held that one does not, by voluntarily testifying on direct examination as to his condition, or ailment, without going into detail, or referring to communications to his physician, waive the benefit of the privilege as to communications between physician and patient.”
 

 In the instant case, on direct examination, the plaintiff voluntarily testified that after the injury and while under the care of Dr. Skinner he had been sent to a skin specialist for treatment. Certain questions and answers were as follows:
 

 “Q. During this period between the time you were
 
 *498
 
 injured and the time you went to Doctor Ramsey, continue working over that period? A. Off and on.
 

 “Q. What was the condition of your right leg during that period? A. All swollen up, sore, and scabby —scales.
 

 “Q. While you were under the care of Doctor Skinner did he refer you to any other doctor for treatment? A. He sent me to a skin specialist.
 

 “Q. Dr. Phillips? A. Dr. Phillips of Wheeling.”
 

 In the foregoing answers the plaintiff voluntarily testified not only in respect to the sore and scabby condition of his leg but also that he had been sent to Dr. Phillips, a skin specialist, for treatment. The exhibition of plaintiff’s leg to Dr. Phillips for treatment would be a communication in respect to its condition. In
 
 Harpman
 
 v.
 
 Devine
 
 the testimony respecting Dr. Fusselman and treatments by him were elicited from the plaintiff by cross-examination. In the instant case the specific condition of the plaintiff’s leg, both before and after the injury, and his being sent to see Dr. Phillips, a skin specialist, were all testified to by the plaintiff on direct examination, that is voluntarily. The field of inquiry was voluntarily broadened to include Dr. Phillips in respect to treatments' for the scaly condition of plaintiff’s leg. Plaintiff had voluntarily testified about the scaly condition of his limb and had connected Dr. Phillips with that subject. In respect to that subject, therefore, Dr. Phillips could testify. It remains to be determined whether Doctor Phillips could testify respecting any oral communications between himself and the patient.
 

 Nowhere in his direct or voluntary testimony did the plaintiff testify as to any oral communications between himself and Dr. Phillips. Since he did not voluntarily testify as to any oral communications, there was no waiver in respect to such subject. Since there was no waiver and no express consent to their revealment, such oral communications were privi
 
 *499
 
 leged and Dr. Phillips conld not under the statute testify in respect thereto. The following question directed to and answered by Dr. Phillips was clearly inadmissible:
 

 “Q. Did you receive any facts from Mr. Baker as to how long this condition had existed previous to the date of your examination? A. Yes, he gave as the duration of the eruption for which I treated him six months previous to the time of my first seeing him.”
 

 The trial court permitted the question to be answered with instructions to the jury that it could not be considered for any purpose except as tending to impeach the testimony of the plaintiff, but it was not admissible for that purpose or any other. As pointed out by the Court of Appeals, the action of the trial court in permitting Dr. Phillips to answer the question was prejudicial error for the reason that the “subject-matter went to the heart of plaintiff’s case and could well have been the deciding factor in the jury verdict.” A long hypothetical question and the answer thereto by Dr. W. Eugene Masters w 3re also inadmissible and prejudicial error for the reason that they were based upon the assumption that the oral communication testified to by Dr. Phillips was admissible and properly in evidence.
 

 It is the conclusion of this court that inasmuch as plaintiff voluntarily testified in detail in respect to the specific condition- of his leg' both before and after the injury and in connection therewith testified that he had been sent to Dr. Phillips, a skin specialist, for treatment, there was a waiver on the subject of the condition of his limb, and by reason thereof Dr. Phillips could properly testify on that subject. But in respect to any oral communications between the plaintiff and Dr. Phillips there was no waiver for the reason that the plaintiff had not voluntarily testified in respect thereto. Since admission of the oral communication testified to by Dr. Phillips and the testimony of Dr.
 
 *500
 
 Masters touching- the same subject were both prejudicial error, the judgment of the Court of Appeals in respect thereto will be affirmed and the case ordered to be remanded to the Court of Common Pleas for a new trial in accord with the foregoing principles.
 

 Judgment affirmed and cause remanded.
 

 Day, Williams and Hart, JJ., concur.
 

 • Matthias, J., concurs in paragraphs' one and three of the syllabus and in the judgment.
 

 Weygandt, C. J., and Zimmerman, J., dissent.