CUTHBERTSON, APPELLEE, *v.* CINCINNATI UNION TERMINAL, APPELLANT.

(No. 8205—Decided March 11, 1957.)

*Mr. Otto F. Putnick* and *Mr. Anthony J. Brueneman, Jr.,* for appellee.

*Mr. William A. McKenzie* and *Messrs. Graydon, Head & Ritchey,* for appellant.

MATTHEWS, J. There is no dispute that the plaintiff, on November 6, 1953, was an employee of Railway Express Agency, and in the course of his duty was unloading the contents of an express car onto a four-wheeled platform truck alongside in the railway terminal of the defendant, and that while so doing a tow of platform trucks under the control of defendant's employee struck the truck on which the plaintiff was standing, while so engaged in transferring the express matter to it from the car, thereby causing him to lose his balance and to fall off the truck onto the platform below. In this action, the plaintiff seeks damages for injuries alleged to have been sustained on account of this fall.

As the result of a trial, the jury returned a verdict for the plaintiff for $25,000, and judgment was entered thereon. It is from that judgment that this appeal was taken.

In an amended petition, the plaintiff alleges that prior to this incident he had experienced pains in his legs and back, had difficulty in walking and other neurological disturbances, and that the fall from the truck on November 6, 1953, had aggravated this pre-existing condition to the extent that he was permanently disabled from following his former occupation. By thus alleging the aggravation of a pre-existing condition, he placed in issue his physical condition both before and after the date of the alleged negligent act of defendant.

In his original petition, plaintiff had alleged that he had suffered a depressed fracture of the vertebra as a result of the fall on November 6, 1953. The defendant denies that the plaintiff's condition was in any way or to any extent attributable to that fall. That was the only substantial issue submitted to the jury.

The plaintiff took the stand and testified in chief in great detail as to his physical condition and as to a prior accident and the effect upon him, and in the course of his testimony told of consulting Dr. Osher after the fall of November 6, 1953. Later, Dr. Osher took the stand, and, after qualifying himself fully as an expert and surgeon in the neurological field, proceeded to testify on direct examination fully as to his treatment of the plaintiff, and the operation which he had performed upon him, and of his conclusions as a result of his examination and treatment. On cross-examination, counsel for the defendant propounded a hypothetical question, upon which he sought to elicit the doctor's opinion as to whether the plaintiff had received a fracture of the spine or lamina on November 6, 1953. The hypothesis recited the actions of the plaintiff just before and after his fall on November 6, 1953, and it seems to be supported by evidence already adduced, although it is claimed that that is not the fact. However, as we view the matter, that is not material.

The court sustained the plaintiff's objection to this question, because, as stated by the court: ''You can't ask a hypothetical question on cross-examination of a witness predicated upon facts which you anticipate that you are going to prove in your case.''

We are of opinion that the court was in error in this respect.

In 32 Corpus Juris Secundum, 372, Section 560, it is stated that:

''While a question asked an expert on cross-examination should state the facts hypothetically * * * it is not essential that it should be framed with strict regard to the usual form of hypothetical question * * *. The requirement that hypothetical questions shall be based on the evidence * * * is not usually applied with strictness to questions asked on cross-examination,'' and to test his reasons for his expressed opinions, or to ascertain the extent of his learning and skill ''the court may permit cross-examination on purely imaginary or abstract questions assuming facts or theories not in evidence.''

See, also, *Walsh, Exr.*, v. *Walsh*, 18 C. C. (N. S.), 91, 32 C. D., 617; 42 Ohio Jurisprudence, 334, Section 340; and 58 American Jurisprudence, 485, Section 856.

It is urged that the extent of cross-examination rests largely in the sound discretion of the trial court and that a reviewing court should not reverse a judgment in the absence of a manifest abuse of discretion. That is the rule, without doubt, but it is also the rule that cross-examination is largely exploratory, and, therefore, a wide latitude should be allowed, and no profert is required because it is exploratory.

In the case under review, we can think of no sound reason for excluding the opinion of an expert selected by the plaintiff and, indeed, the trial judge did not place his ruling on any such ground. He sustained the objection because he considered himself bound by a positive rule of law to do so, regardless of any inclination he might have had.

As already noted, the plaintiff testified fully as to his physical condition both before and after November 6, 1953, and in the course of doing so named various physicians who had treated him professionally, among others, Dr. Stanley Whitehouse, whom he consulted on November 9, 1953. On direct examination, the plaintiff testified as follows:

"Q. Will you tell the court and jury where you hurt? A. I hurt in my back and legs.

"Q. What happened after these three days you rested at home? A. I went to Dr. Whitehouse, the family physician.

"Q. And what did he do? A. He sent me to Bethesda Hospital to have pictures taken of my back.

"Q. Did he render any treatment to you after the date of November 6? A. Yes, he gave me a shot."

The defendant called Dr. Whitehouse as its witness, who, after testifying that the plaintiff had been his patient from May 11, 1951, to November 28, 1953, and that he had examined his back on November 9, 1953, was asked these questions:

"Q. What did you find?

"Mr. Putnick: Objection.

"The Court. Objection sustained.

"Q. Now, Doctor, did you find any evidence of trauma on this man's back when you examined him on the 9th of November, 1953?

"Mr. Putnick: Again, I am objecting.

"The Court: Objection sustained.

"Q. Doctor, was there any evidence of bruising in the area?

"Mr. Putnick: Objection again, if your Honor please.

"The Court: Objection sustained.

"Q. Did you order X-Rays taken of this man? A. Yes, I did send him for X-Rays.

"Q. Did you read the X-Rays? A. I did not.

"Q. Did you get a report on the X-Rays? A. I did.

"Q. Did the X-Rays show any evidence of injury to the back?

"Mr. Putnick: Objection at this time.

"The Court: Objection sustained."

Following this testimony, the judge explained that he had sustained the objections on the authority of *Harpman* v. *Devine, Recr.,* 133 Ohio St., 1, 10 N. E. (2d), 776, and because the plaintiff had not expressly waived the privilege, and had not testified on the subject in his direct examination.

The ruling of the court is assigned as error.

The assignment calls for an interpretation of Section 2317.02, Revised Code, which, so far as pertinent here, provides that a physician shall not testify "concerning a communication made to him by his patient in that relation, or his advice to his patient, but the * * * physician may testify by express consent of the * * * patient * * * and if the * * * patient voluntarily testifies, the * * * physician may be compelled to testify on the same subject."

It is asserted that the construction placed on this language in *Harpman* v. *Devine, supra,* supports the ruling of the trial court in sustaining the objection to the competency of Dr. Whitehouse to testify to information he had received as the physician of the plaintiff. Let us examine that case. Many features of the case bear a striking similarity to the case at bar, but there are also striking dissimilarities. One striking dissimilarity is that the plaintiff in that case was not seeking to recover on account of the aggravation of a pre-existing disease or condition. He was seeking to recover for a physical condition having its origin in the negligent act of the defendant— and for nothing else. There was no necessity for him to prove or refer to his prior physical condition. In 31 Corpus Juris

Secundum, 833, Section 150 b, it is stated that: "In the absence of contrary evidence, it will be presumed that persons possess ordinary human faculties, and are normal as to health and the natural functions of the body and organs." On direct examination, the plaintiff was asked: "Will you just tell us what your general physical condition has been previous to July, 1934?" To which he answered: "Why, I have been good; it was good, I should say." That was the only testimony on direct examination. He did answer more in detail in response to questions on cross-examination, which the court held was not voluntary, and that while the answers on direct examination were voluntary, they did not enlarge the "subject" as that term is used in the statute so as to include testimony of a physician who had treated him at some prior time, to whom no reference whatsoever was made.

The case is in marked contrast to the case at bar, in which the plaintiff placed his prior physical condition in issue by alleging an aggravation of a pre-existing condition, and by testifying on direct examination fully as to that condition, and by mentioning Dr. Whitehouse as his physician and the treatment administered by him.

We are of the opinion that *Harpman* v. *Devine, supra* (133 Ohio St., 1), is inapplicable. Although the reference on direct examination in that case could be construed only by implication to a denial of prior treatment by a physician, it is worthy of note that two of the six judges taking part in the case dissented, and called attention, among other cases, to *Spitzer* v. *Stillings, Exr.*, 109 Ohio St., 297, 142 N. E., 365, in which the same section was construed to mean that if a client took the stand and testified as to matters pertinent to his cause of action, he could be cross-examined as to any communication between him and his attorney, even though no reference to such communication had been made on direct examination.

We are of opinion that this case is governed by the case of *Baker* v. *Industrial Commission*, 135 Ohio St., 491, 21 N. E. (2d), 593. We think it sufficient to quote the second paragraph of the syllabus:

"Where a patient voluntarily testifies that his right leg was free from boils and scaly condition before a certain injury

but that thereafter it was all swollen up, sore and scabby, and that he was sent to a certain physician, a skin specialist, for treatment, there is a waiver in respect to the condition of his right leg and the physician may therefore testify on that subject.''

It will be noted that the court limited the waiver to the physical condition testified to by the patient, and it will be noted that the waiver is broad enough to cover the testimony of Dr. Whitehouse in the instant case. However, the two judges who dissented in *Harpman* v. *Devine* dissented from placing that limitation on the waiver.

We hold that the trial court erred in sustaining the objection to the questions propounded to Dr. Whitehouse.

At the trial, the court, on request of counsel for defendant, submitted the following special interrogatory to the jury: ''Did the plaintiff sustain the fracture of the lamina in his back when he fell at the Cincinnati Union Terminal on November 6, 1953?'' To which the jury responded: ''Based on the evidence presented, it is the opinion of the undersigned that the fracture of the lamina did exist prior to November 6, 1953, and that this condition was aggravated by the accident of November 6, 1953.''

It is the contention of the appellant that there is no substantial evidence of aggravation of a pre-existing condition, and, therefore, the court erred in overruling its motions for judgment.

Not only does the appellant contend that there is no evidence of any sort in proof of aggravation but, perhaps, more confidently asserts that there is no expert testimony of aggravation, which, as it contends, is a *sine qua non* in this sort of a situation, citing *Aiken* v. *Industrial Commission*, 143 Ohio St., 113, 53 N. E. (2d), 1018, and *Stacey* v. *Carnegie-Illinois Steel Corp.*, 156 Ohio St., 205, 101 N. E. (2d), 897.

A reading of the record discloses that there is both lay and expert testimony of aggravation of this pre-existing condition, and that this testimony is substantial. The case, therefore, does not require us to decide whether this case presents a situation requiring expert testimony.

We find that the court did not err in overruling the defend-

ant's motions for an instructed verdict and for judgment, and that there are no errors prejudicial to the defendant other than those heretofore pointed out in this opinion.

For these reasons, the judgment is reversed, and the cause remanded for further proceedings.

*Judgment reversed.*

HILDEBRANT, P. J., and LONG, J., concur.