COVINGTON, EXRX., APPELLANT, *v.*
SAWYER ET AL., APPELLEES.

(No. 82AP-391—Decided April 26, 1983.)

*Michael F. Colley Co., L.P.A.,* and *Mr. Frank A. Ray,* for appellant.

*Messrs. Vorys, Sater, Seymour & Pease, Mr. Bruce L. Ingram* and *Mr. Michael W. Donaldson,* for appellees.

MOYER, J. This case is before us on the appeal of plaintiff-appellant, Donna M. Covington, Executrix of the Estate of Virginia Ann Price, from a judgment of the Court of Common Pleas of Franklin County directing a verdict for plaintiff on the issue of liability and rendering judgment on a jury verdict awarding damages to plaintiff in the amount of $1,052. This amount was substantially less than the amount plaintiff prayed for in her complaint and plaintiff appeals.

The evidence shows that, on August 23, 1978, Virginia Price, the decedent, was either stopped or moving at a very slow rate of speed at the top of a freeway exit ramp and attempting to merge into the northbound traffic on Hamilton Road. Defendant Kevin Sawyer, driving a truck belonging to his employer, defendant Coca-Cola Bottling Company of Ohio, and acting within the scope of that employment, struck the back of Price's vehicle.

The trial court directed a verdict against defendants on the issue of liability. The damage to Price's vehicle totaled approximately $200 to $300. The issue of the amount of damages to be awarded for Price's injury, which was submitted to the jury, was complicated considerably by plaintiff's claim that Price's pre-existing breast cancer was aggravated and its growth accelerated by the accident.

Plaintiff asserts the following two assignments of error in support of her appeal:

"I. The trial court erred in overruling appellant's motion for mistrial since the trial court permitted Dr. Francis Barnes' prejudicial hearsay testimony over appellant's objection.

"II. The trial court erred by overruling appellant's motion in limine since the depositions of Frances [*sic*] Barnes, M.D., and George C. Crile, M.D., were secured in violation of the Ohio Rules of Civil Procedure 27 through 37, resulting in highly prejudicial and tainted testimony."

Plaintiff's first assignment of error

concerns the testimony of Dr. Francis Barnes, a surgeon to whom Price was referred by her general practitioner, Dr. John Stephens. Dr. Stephens testified that he first suspected Price had fibrocystic disease (a noncancerous condition) of her left breast in 1968. When Price's left breast began to bleed in September 1972, Dr. Stephens ordered a pap smear which showed abnormal cells indicative of intraductal papilloma (growths within the ducts of the breasts). At this time, Dr. Stephens referred Price to Dr. Barnes. Dr. Barnes performed surgery (apparently some sort of biopsy) on Price on January 5, 1974.

Both doctors agreed that this surgery revealed very early cancer in Price's left breast. Dr. Barnes testified that the surgery revealed "ductal carcinoma" (cancer within the ducts), without evidence of invasion into the surrounding tissue. Dr. Stephens' office notes, which were introduced and admitted as an exhibit during the trial, show a diagnosis of "* * * intraductal carcinoma, breast" was made on January 8, 1974. Dr. Stephens also testified that the surgery revealed "proliferative interductal [sic] carcinoma" with no evidence of invasion outside the duct. Yet, on cross-examination, Dr. Stephens stated that the surgery performed on January 5, 1974 also showed adeno carcinoma or cancer in the breast tissue outside the duct.

Both Dr. Barnes and Dr. Stephens advised Price that there was an excellent chance that a mastectomy undertaken at this point would cure the cancer by eradicating it in its early stages. Although both doctors strongly recommended the operation, Price refused to consider a mastectomy.

Instead, Price, who had been studying breast cancer, asked Dr. Barnes to arrange a meeting with Dr. George C. Crile, Jr., a breast cancer specialist practicing at the Cleveland Clinic. Dr. Crile diagnosed intraductal cancer of the left breast on March 26, 1974, and strongly recommended a mastectomy.

Dr. Stephens indicated in his office notes for September 1974 through May 1975 that he did not feel a mass in Price's left breast. However, Dr. Stephens testified that, on September 12, 1975, Price's left breast was slightly more full than her right breast and the doctor could feel a mass. Dr. Stephens' office notes confirm this testimony. Dr. Stephens further testified that the fullness and the mass indicated to him that the local tumor had spread. Dr. Stephens' office notes of January 6, 1976, and of March 1, 1976, indicated that the left breast had large lumps, palpable nodules, and was much firmer than the right.

The doctors' findings to this point provide the background for Dr. Barnes' testimony which plaintiff claims was inadmissible and prejudicial hearsay. Plaintiff claims that the cancer had not spread before the accident — that it was still localized within the ducts of the breast and that the trauma Price incurred in the accident allowed the cancer to break through the walls of the ducts and spread throughout Price's body.

There is no question that, when Price was admitted to the hospital in June 1979, the cancer had spread to her bones causing spontaneous fractures and that the cancer was ultimately a cause contributing to Price's death in June 1981. Defendants claim that the cancer had spread before the accident and that Dr. Stephens realized that it had spread. Dr. Stephens testified at trial that, in his opinion, the cancer had not spread before the accident.

Dr. Crile testified that breast cancer frequently travels into the lymphatic system and has a predilection to move through the lymphatics into the bones. Dr. Barnes testified that, when he talked to Dr. Stephens in approximately March 1978, five months before the accident, Dr. Stephens told Dr. Barnes that Price had a rather sizeable breast mass and the cancer had spread to the axilla or armpit. According to the expert witnesses, a mass in the armpit would indicate that the

cancer had spread from the breast to the lymphatics. The trier of fact could have concluded, based upon Dr. Barnes' testimony, that the cancer had spread prior to the accident. From this testimony the jury could also have inferred that the cancer's spread was not attributable to the accident. Plaintiff argues that Dr. Barnes' testimony was inadmissible hearsay.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (Evid. R. 801[C].)

Hearsay is generally inadmissible because the declarant, the person who made the statement, is not in court testifying and the triers of fact are not able to observe the declarant and decide for themselves whether the declarant's statement is worthy of belief. As one commentator stated:

"The factors upon which the credibility of testimony depends are the perception, memory, and narration of the witness. * * *" (McCormick, Evidence [2 Ed. Cleary Ed. 1972] 581, Section 245.)

Other commentators add sincerity to this list of testimonial defects. *E.g.,* Blackmore & Weissenberger, Ohio Evidence (1982), Sections 801.1 to 801.38. If the declarant is not present in the courtroom subject to cross-examination, it is difficult for the triers of fact to determine whether the declarant correctly perceived that about which he is making a statement, whether he remembers it correctly, whether his words accurately convey what he means to say, and whether he is telling the truth.

It is generally agreed that putting the declarant on the witness stand and subjecting him or her to cross-examination allows the triers of fact to determine whether his statement is free from the four testimonial defects described above.

"The theory of the hearsay rule is that the many possible deficiencies, suppressions, sources of error and untrustworthiness, which lie underneath the bare untested assertion of a witness, may be best brought to light and exposed by the test of cross-examination. * * * " (5 Wigmore on Evidence [Chadbourn Rev. 1974] 3, Section 1362.)

Even when the declarant is not subject to cross-examination, statements falling within the Evid. R. 803 and 804 exceptions to the hearsay rule and statements classified in Evid. R. 801(D) as nonhearsay are admissible since they are made in circumstances demonstrating their reliability or because they exhibit independent indicia of trustworthiness which substitute for cross-examination. If a statement is made in circumstances which indicate that it is trustworthy, the rationale for excluding second-hand statements ceases to exist and the statements may be admitted for their probative value.

Defendants claim Dr. Barnes' testimony is not hearsay because it relates a statement offered against a party which was made by a person authorized by the party to make a statement concerning the subject. Statements of this nature are classified as nonhearsay in Evid. R. 801(D)(2)(c). In other words, defendants claim Dr. Stephens was implicitly authorized to discuss Price's condition and diagnosis with the specialist (Dr. Barnes) to whom Dr. Stephens had referred Price and, since Dr. Stephens' statement indicating the cancer had spread before the accident was offered against Price, it was not hearsay.

We agree with defendants' contention. A patient whose general practitioner refers her to a specialist for diagnosis and interpretation of specific symptoms, particularly at the patient's own request, authorizes her doctor to discuss her symptoms with the specialist. If we were to decide that Dr. Stephens was not authorized by Price to discuss Price's case with the specialist to whom she had been referred, a general practitioner would have no reason to refer a case to a specialist and would be prohibited from

using the specialist's more specific training and knowledge. We would also be denying a rather obvious inference that virtually every patient with a potential serious disorder expects that his or her referring doctor will discuss the diagnosis and treatment with a specialist to whom the patient has been referred. Thus, since Dr. Stephens was authorized by Price to make statements to Dr. Barnes regarding the subject of Price's cancer, Dr. Barnes' testimony repeating Dr. Stephens' statement is properly classified as nonhearsay pursuant to Evid. R. 801(D)(2)(c).

Additionally, we note that a statement concerning a patient's symptoms made by a general practitioner to a specialist to whom the patient has been referred bears independent indicia of trustworthiness and reliability. Doctors conferring on a case concerning the recommended course of treatment and the progress of a patient have no readily apparent reason to lie. The purposes and policies of the hearsay rule are not defeated by admitting Dr. Barnes' testimony concerning Dr. Stephens' statement, expecially since Dr. Stephens took the stand and was available for cross-examination concerning his statement.

Even if we were to hold that Dr. Barnes' testimony concerning Dr. Stephens' statement was inadmissible hearsay, we would not reverse the judgment in this case. Any error in the trial court's decision to admit Dr. Barnes' testimony was not prejudicial to plaintiff since the same evidence was admitted in the form of Dr. Stephens' office notes. Dr. Barnes testified that Dr. Stephens told him that Price had a "* * * rather sizeable breast mass that he could feel and it also had spread to the axilla or armpit." Immediately above his entry for May 1, 1978, Dr. Stephens wrote in the office notes he kept concerning Price the following: "Mass L Br Baseball sz c golfball nodule in L axilla."

This notation, entered at least two-and-one-half months before the accident, taken together with Dr. Stephens' earlier testimony that the local tumor had already spread in 1975, places the same evidence before the jury that Dr. Barnes' testimony conveyed to them. Thus, even if the trial court erred in allowing Dr. Barnes to testify concerning Dr. Stephens' statement, the error was not prejudicial to plaintiff and does not constitute cause for reversal. *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107 [41 O.O.2d 412], paragraph one of the syllabus. Plaintiff's first assignment of error is overruled.

Plaintiff asserts in her second assignment of error that the trial court erred in failing to exclude the depositions of Dr. Barnes and Dr. Crile since the depositions were obtained in violation of the Ohio Rules of Civil Procedure relating to discovery.

Initially we note that plaintiff's second assignment of error first claims that the court below erred in overruling her motion *in limine*. Since we have jurisdiction to review only final orders and judgments (Section 3[B][2], Article IV, Ohio Constitution), and a ruling on a motion *in limine* is a tentative preliminary ruling, we have no jurisdiction to review the trial court's preliminary decision to overrule plaintiff's motion *in limine*. See *Riverside Methodist Hosp. Assn.* v. *Guthrie* (1982), 3 Ohio App. 3d 308; *State* v. *Spahr* (1976), 47 Ohio App. 2d 221, 223-226 [1 O.O.3d 289]. Plaintiff, however, preserved the objection she made in her motion by objecting to the doctors' testimony on the same grounds during the trial.

Furthermore, the assignment of error refers to error which occurred in obtaining the doctors' depositions, yet it appears Dr. Barnes was never deposed, although he did testify at trial. We will, however, overlook these deficiencies in the wording of plaintiff's second assignment of error and rule on the substance of her allegations.

The argument plaintiff advances in support of her second assignment of error is that defendants held "clandestine" conferences with Dr. Barnes and Dr. Crile in violation of Civ. R. 26 through 37 and that, as a consequence, the doctors' testimony became tainted and inadmissible. Plaintiff does not claim defendants violated a specific civil rule, nor does she reveal the manner in which the *ex parte* conferences prejudiced her.

There is no indication in the record that defendants' attorneys ever met with Dr. Barnes outside the courtroom or outside plaintiff's presence. Part of the deposition attached to plaintiff's motion *in limine* indicates that plaintiff's attorney was invited by Dr. Crile to come early to the deposition of Dr. Crile but, since plaintiff's attorney was "too busy," Dr. Crile and defendants' attorneys were alone together for approximately one hour prior to Dr. Crile's deposition. There is no indication in the record that defendants' attorneys attempted to influence the doctors' testimony or to meet with them in a surreptitious manner.

Civ. R. 26(B)(4) provides that: "* * * a party may discover facts known or opinions held by an expert retained or specially employed by another party in anticipation of litigation or preparation for trial only upon a showing that the party seeking discovery is unable without undue hardship to obtain facts and opinions on the same subject by other means * * *" and that a party may discover from another party's expert only the opinions the expert will give on direct examination. Civ. R. 26(B)(4) does not apply to the testimony of Dr. Barnes and Dr. Crile. These doctors were not retained by plaintiff in preparation for trial, nor were they witnesses plaintiff expected to call at trial. Price was examined by Dr. Barnes and Dr. Crile approximately four-and-one-half years before the trial. Furthermore, plaintiff's answers to defendants' interrogatories and her pretrial statement indicate that she intended to call only Dr. Stephens (and possibly a Dr. Matrka).

Dr. Barnes and Dr. Crile were two of Price's treating physicians who were called at trial to testify because they were actors or viewers of Price's physical condition. The doctors were not retained in anticipation of litigation; they were ordinary witnesses to whom Civ. R. 26(B)(4) does not apply. *Riggs* v. *Mann Nursing Home* (Feb. 15, 1983), Franklin App. No. 82AP-271, unreported; see 8 Wright & Miller, Federal Practice & Procedure — Civil (1970) 257, Section 2033.

Furthermore, Dr. Barnes and Dr. Crile were not plaintiff's witnesses. Defendants served upon plaintiff the notice to take the deposition of Dr. Crile which is required by Civ. R. 30(B)(1). Defendants also questioned Dr. Crile on direct examination during the videotaped deposition and the videotape was played to the jury by defendants during the presentation of defendants' case. Dr. Barnes was never deposed, but defendants subpoenaed him into court, called him as their witness, and conducted the direct examination of Dr. Barnes.

If Dr. Barnes and Dr. Crile were either party's witnesses, they were defendants' witnesses. There is no rule, written or unwritten, prohibiting a party or his attorney from conducting *ex parte* conferences with that party's own witnesses. Thus, plaintiff's objection to the testimony of the doctors must be based on the fact that these doctors were Price's treating physicians rather than on the argument that the doctors were plaintiff's witnesses. The issue actually raised by plaintiff's second assignment of error is whether defendants' attorneys conferred with Price's treating physicians in violation of Price's physician-patient privilege.

Communications between a doctor and his patient are, as a general rule, privileged communications regarding which the doctor may not testify without the patient's permission. R.C. 2317.02(B). However, when "* * * the patient volun-

tarily testifies the physician may be compelled to testify on the same subject * * *." R.C. 2317.02(B).

Price testified via a videotaped deposition which was taken before she died to preserve her testimony. Price testified fully and in detail about the progress of her cancer and the diagnoses of her doctors. By testifying concerning her condition, Price effectively waived her claim that the statements concerning her condition were privileged. *Baker* v. *Indus. Comm.* (1939), 135 Ohio St. 491 [14 O.O. 392], paragraph two of the syllabus; *In re Roberto* (1958), 106 Ohio App. 303, 310 [7 O.O.2d 63]; *Cuthbertson* v. *Cincinnati Union Terminal* (1957), 103 Ohio App. 385, 388-391 [3 O.O.2d 411]; *In re Loewenthal* (1956), 101 Ohio App. 355, 360-361 [1 O.O.2d 302].

None of plaintiff's objections to the doctors' testimony is well-taken since the doctors testified as ordinary witnesses and since Price herself invalidated her claim of privilege by testifying about her physical condition. Plaintiff's second assignment of error is overruled.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

REILLY and COOK, JJ., concur.

COOK, J., of the Eleventh Appellate District, sitting by assignment in the Tenth Appellate District.