**MEYERS, ROMAN, FRIEDBERG & LEWIS, L.P.A. et al., Appellees**

**v.**

**MALM et al., Appellants.**

[Cite as *Meyers, Roman, Friedberg & Lewis., L.P.A. v. Malm,* 183 Ohio App.3d 195, 2009-Ohio-2577.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 90949.

Decided June 4, 2009.

Reminger & Reminger Co., L.P.A., Nicholas D. Satullo, and James O'Connor; and Meyers, Roman, Friedberg & Lewis, L.P.A., Ronald P. Friedberg, and Matthew E. Parkins, for appellees.

McIntyre, Kahn & Kruse Co., L.P.A., Greg J. Ochocki, and Scott H. Kahn, for appellants.

MARY J. BOYLE, Judge.

{¶ 1} Defendants-appellants, John A. Malm Jr. and his company, J. Artist Management, Inc. (collectively "Malm"), appeal from an interlocutory order granting a motion to compel filed by plaintiffs-appellees, Meyers, Roman, Friedberg & Lewis, L.P.A., and its employees (attorneys who represented Malm), Alan N. Hirth, Debra J. Horn, and Kennee B. Switzer (collectively "MRFL"). Finding no merit to the appeal, we affirm.

Background and Procedural History

{¶ 2} MRFL represented Malm in an action brought by Trent Reznor (of the band Nine Inch Nails) in the United States District Court, Southern District of New York.[1] Malm had been Reznor's personal manager for many years. Reznor filed suit, claiming that Malm had misappropriated money and ownership rights regarding the trademark name "NIN." The case proceeded to trial in May 2005, after which Reznor obtained a jury verdict against Malm for nearly $5 million.

{¶ 3} In July 2005, MRFL brought suit against Malm for breach of contract and unjust enrichment, seeking $608,703 in unpaid legal fees, plus pre- and postjudgment interest. Malm responded and brought a counterclaim for breach of contract and legal malpractice.

{¶ 4} On December 3, 2007, MRFL subpoenaed information from the law firm Fay Sharpe, L.L.P. Fay Sharpe had been Malm's patent/trademark counsel on intellectual-property matters, including matters involving Reznor and the NIN trademark. In the subpoena, MRFL requested the following:

{¶ 5} "Any and all communications of any kind between Federal District Judge Jed Rakoff and [Fay Sharpe attorneys], or anyone at the law firm of Fay, Sharpe, Fagan, Minnich & McKee (or any former name or current name of such law firm) during the year 2005."

{¶ 6} Malm instructed Fay Sharpe not to produce documents based upon attorney-client privilege. On December 31, 2007, MRFL moved to compel Fay Sharpe to produce the information it had subpoenaed.

{¶ 7} The trial court granted MRFL's motion to compel, finding that Malm had voluntarily waived the attorney-client privilege, agreeing with United States District Court Judge Jed Raykoff of the Southern District of New York that Malm's testimony that he knowingly made false statements on a trademark application on the advice of counsel constituted "total, complete, and absolute waivers of the attorney-client privilege." The trial court further found that Malm

1. *Reznor v. J. Artist Mgt., Inc.* (S.D.N.Y.2005), 365 F.Supp.2d 565.

voluntarily waived the attorney-client privilege on two other occasions: (1) when he responded to Judge Raykoff's questions in the Reznor litigation and (2) during his deposition in the current case.

{¶ 8} It is from this judgment that Malm filed notice of an interlocutory appeal,[2] raising four assignments of error for our review:

{¶ 9} "[1.] The trial court erred when it ruled defendant/appellant John A. Malm, Jr. waived the attorney-client privilege between Malm and Fay Sharpe, LLP when Malm testified at trial under cross-examination before the U.S. District Court for the Southern District of New York that he signed a trademark application on the advice of counsel.

{¶ 10} "[2.] The trial court erred when it ruled defendant/appellant John A. Malm, Jr. waived the attorney-client privilege between Malm and Fay Sharpe, LLP when he answered questions posed to him by a U.S. District Court Judge during trial on the record while outside the presence of the jury.

{¶ 11} "[3.] The trial court erred when it ruled defendant/appellant John A. Malm, Jr. waived the attorney-client privilege between Malm and Fay Sharpe, LLP based on Malm's discovery deposition testimony on cross-examination in the instant matter.

{¶ 12} "[4.] The trial court erred when it found defendant/appellant John A. Malm, Jr. waived the attorney-client privilege between Malm and Fay Sharpe, LLP based, in part, on Malm's deposition testimony on cross-examination when Malm's deposition testimony was never properly before the court."

Standard of Review

{¶ 13} A trial court is vested with wide discretion in rendering decisions on discovery matters. *Dandrew v. Silver,* 8th Dist. No. 86089, 2005-Ohio-6355, 2005 WL 3219730, ¶ 35, citing *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 592, 664 N.E.2d 1272. Thus, the applicable standard for appellate court review of a disputed trial court's handling of discovery matters is whether the trial court abused its discretion. An abuse of discretion connotes an unreasonable, arbitrary, or unconscionable decision. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

Voluntary Waiver of Attorney–Client Privilege

{¶ 14} In his first three assignments of error, Malm argues that the trial court erred when it found that he voluntarily waived the attorney-client privilege on

2. Under R.C. 2505.02(A)(3), an interlocutory order that grants or denies a "provisional remedy," including an order regarding discovery of a privileged matter, is immediately appealable.

three separate occasions: (1) when he testified under cross-examination in the Reznor litigation, (2) when he responded to Judge Raykoff's questioning in the Reznor litigation, and (3) when he testified on cross-examination during his deposition in the current case. Because Malm's arguments in all three instances are the same, we will address these assignments of error together.

{¶ 15} Malm maintains that on all three occasions, his testimony was involuntary. He argues that his cross-examination testimony in the Reznor litigation, as well as his deposition testimony in this case, was not voluntary. He further argues that he had no choice but to answer Judge Raykoff's questions in the Reznor litigation. He therefore contends that because his testimony on all three occasions could not have been considered voluntary, it did not act as a waiver of privilege. We disagree.

A. *Applicable Law*

{¶ 16} In *Jackson v. Greger,* 110 Ohio St.3d 488, 2006-Ohio-4968, 854 N.E.2d 487, the Ohio Supreme Court held that "R.C. 2317.02(A) provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." Id. at syllabus, following *State v. McDermott* (1995), 72 Ohio St.3d 570, 651 N.E.2d 985.

{¶ 17} R.C. 2317.02 provides: "The following persons shall not testify in certain respects: (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client * * *. However, if the client voluntarily testifies or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject."

{¶ 18} Malm relies heavily on *Harpman v. Devine* (1937), 133 Ohio St. 1, 9 O.O. 347, 10 N.E.2d 776, and *Tandon v. Tandon* (Dec. 27, 1999), 7th Dist. No. 99JE36, 1999 WL 1279162. The court in *Harpman* was faced with the question of whether the plaintiff had voluntarily testified regarding any relationship with a physician "that could fall within the purview of 'communications' or 'advice.' " Id. at 5, 9 O.O. 347, 10 N.E.2d 776. The court explained:

{¶ 19} "The only testimony the plaintiff gave respecting Dr. Fusselman is to be found in his answers on cross-examination in response to questions by counsel for defendant. Is such testimony voluntary within the meaning of the statute? Is it something brought forth 'voluntarily' by the plaintiff? He was obliged to answer the questions whether he desired to or not. Whatever was developed respecting Dr. Fusselman in cross-examination was brought out by the defendant. In that cross-examination of the plaintiff, it was counsel for defendant who directed the course of the inquiry. It was counsel for defendant who propounded the subjects

of the questions which plaintiff was obliged to answer. The plaintiff had no choice about the matter. He was obliged to answer or be in contempt of court. Obviously, in such a situation the plaintiff did not 'voluntarily' testify respecting any 'communications' or 'advice' from Dr. Fusselman. There was no waiver in the testimony on cross-examination." Id. at 5–6, 9 O.O. 347, 10 N.E.2d 776.

{¶ 20} The court in *Tandon* followed *Harpman* and held that the testimony in that case was under cross-examination and thus was not voluntary. Notably, however, the *Tandon* court stated:

{¶ 21} "While this court has decided to uphold the attorney-client privilege based upon the facts present in the case at bar, our decision should not be read so as to create a blanket rule that a client may make any statement regarding counsel during cross-examination without the fear of waiving the privilege. If this court is presented with the proper circumstances, we will not hesitate to find a waiver of the attorney-client privilege despite the fact that the statements made by a client were on cross-examination. We can certainly conceive situations where a client makes false statements regarding material matters during the course of direct examination and then attempts to place blame on his counsel during cross-examination when the truth of the matter is discovered. Under these and similar types of circumstances, a waiver of the attorney-client privilege may be held to have occurred." Id.

{¶ 22} The Ninth Appellate District also declined to adopt a bright-line rule that testimony in a deposition that is solicited by an opponent can never be voluntary. *Amer Cunningham Co., L.P.A. v. Cardiothoracic & Vascular Surgery of Akron,* 9th Dist. No. 20899, 2002-Ohio-3986, 2002 WL 1800323, ¶ 17. It held, "[T]his Court finds that to determine if deposition testimony constitutes a waiver under R.C. 2317.02(A), a court must consider the facts of the case before it, specifically the questions and answers from the deposition, and then decide if the testimony concerning the relevant information was voluntary." Id.

B. *Analysis*

{¶ 23} Malm claims that like the plaintiffs in *Harpman* and *Tandon,* he had no choice but to answer Reznor's counsel's questions on cross-examination or he would have been in contempt of court. He further maintains that his testimony upon further questioning from Judge Raykoff could not have been considered voluntary. We disagree.

{¶ 24} The following exchange took place between Malm and Reznor's counsel in the Reznor litigation:

{¶ 25} "Q. According to you, Mr. Malm, the terms of that verbal agreement [between him and Reznor] are that Trent wanted to give you half of the trademark [NIN]?

{¶ 26} "A. That's correct.

{¶ 27} "Q. According to you, he gave it to you like he was giving you a stick of gum?

{¶ 28} "A. As a gift.

{¶ 29} "* * *

{¶ 30} "Q. Before you ever had Trent sign those joint trademark applications, you never had a conversation with him where he agreed to give you 100 percent of the trademarks in the name Nine Inch Nails, right?

{¶ 31} "A. I believe we did, actually.

{¶ 32} "* * *

{¶ 33} "Q. [reading from Malm's deposition taken earlier] 'Did you ever have a discussion with Trent where he agreed to give you—that you could own 100 percent of those trademarks?'

{¶ 34} "A. 'No.'

{¶ 35} "Q. 'And by those trademarks, I'm again referring to the Nine Inch Nails name. He never—you never had a conversation where he agreed to give you a hundred percent of the name?'

{¶ 36} "A. 'Correct.'

{¶ 37} "A. I said that in my deposition. I misspoke. I was confused.

{¶ 38} "Q. You were confused again?

{¶ 39} "A. Yes.

{¶ 40} "Q. Once again, you didn't change your testimony, having had a chance to review it?

{¶ 41} "A. I was trying to figure out why that happened. I have to state that at no time was I out to get 100 percent of Trent's trademarks. But the reason it was done, it was done on the advice of counsel."

{¶ 42} Upon hearing Malm's testimony, Judge Jed Raykoff immediately had counsel approach the bench. At the sidebar, Judge Raykoff stated:

{¶ 43} "THE COURT: Twice now the witness in different contexts has said he did something on advice of counsel. His [current] counsel of course is present here. Since there was not interruption, those are total waivers, total complete, and absolute waivers of the attorney-client privilege as to those matters. Was this advice of counsel raised previously, this advice of counsel defense?

{¶ 44} "[MS. HORN]: Your honor, I believe what he might be referring to is discussions he had with [Fay Sharpe]. He is not talking about discussions with us.

{¶ 45} "THE COURT: I know he is not talking about that. What I am concerned about is in his deposition he simply denies any conversation. Now he says he has one but then he volunteers, but the reason I did the way I did it was on advice of counsel. That is not even in response to a question from the plaintiff's counsel; it is something he has volunteered, and he has done it twice now in two different contexts."

{¶ 46} Later, outside the presence of the jury in the Reznor litigation, Judge Raykoff questioned Malm about the matter.

{¶ 47} "THE COURT: * * * The lawyers who represented you in connection with this application [trademark application for the name NIN] were [Fay Sharpe attorneys], is that right?

{¶ 48} "[MALM]: Yes, sir.

{¶ 49} "THE COURT: * * * Did I understand you to be saying that it was on their advice that you signed this declaration?

{¶ 50} "[MALM]: Yes.

{¶ 51} "THE COURT: Had you told them that the trademark, in part or in whole, belonged to Mr. Reznor?

{¶ 52} "[MALM]: Yes.

{¶ 53} "THE COURT: And they prepared this declaration thereafter?

{¶ 54} "[MALM]: Yes.

{¶ 55} "THE COURT: Did they say to you why they were asking you to sign a false declaration?

{¶ 56} "[MALM]: There was a reason this was done.

{¶ 57} " * * *

{¶ 58} "THE COURT: Let me ask defense counsel, do you know of any reason why I should not refer to the appropriate authorities—both bar association grievance committee, disciplinary authorities in Ohio, and also perhaps the U.S. Attorney's office in Washington—the seeming evidence that [Fay Sharpe attorneys] knowingly prepared and submitted a false declaration?"

{¶ 59} The facts in the case sub judice differ substantially from those in *Harpman* and *Tandon*. Malm affirmatively asserted, without being asked, that he acted on the advice of his Fay Sharpe attorneys. As Judge Raykoff stated, Malm voluntarily offered this contention as a defense to counter the fact that he

misappropriated Reznor's trademark rights. It was not forced out of him by Reznor's counsel on cross-examination. In fact, it was not even asked of him. Moreover, when Malm answered Judge Raykoff's questions, his answers simply reaffirmed and clarified what he had already testified to.

{¶ 60} As for his deposition testimony in the current litigation—regarding the same subject matter—Malm argues that it was also involuntary, since deposition testimony is considered cross-examination. For the same reasons we set forth above, we also disagree with this argument.

{¶ 61} Accordingly, we find that Malm voluntarily waived the attorney-client privilege on all three occasions. Malm cannot manipulate the attorney-client privilege by unilaterally choosing to disclose information favorable to him, while concurrently seeking to bar the search for potentially unfavorable information. See *Rubel v. Lowe's Home Ctrs., Inc.* (N.D.Ohio 2008), 580 F.Supp.2d 626, 629. Malm cannot now prevent Fay Sharpe from discussing communications that could absolve it from any wrongdoing—communications that Malm himself put in issue.

{¶ 62} Malm's first three assignments of error are overruled.

Trial Court's Reliance on Deposition Testimony

{¶ 63} In his fourth assignment of error, Malm claims that his deposition testimony in the instant case was not properly before the trial court because MRFL attached the transcript from his deposition to its reply brief, which it never obtained leave to file. We find his argument to be unpersuasive. Even if we were to find that the trial court improperly relied on Malm's deposition testimony, which we are not doing, any error on the part of the trial court was harmless. Malm does not dispute the fact that his deposition testimony involved the same subject matter that he already disclosed in the Reznor litigation. The trial court could have granted MRFL's motion to compel based solely upon his voluntary statements made on cross-examination in the Reznor litigation, as well as his answers to Judge Raykoff's questions. His deposition testimony was not even necessary for the trial court to find that he waived the privilege.

{¶ 64} Accordingly, Malm's fourth assignment of error is overruled.

Judgment affirmed.

Rocco, P.J., and Sweeney, J., concur.