**The STATE of Ohio, Appellee,**

v.

**WOLFE, Appellant.**

[Cite as *State v. Wolfe* (1992), 81 Ohio App.3d 624.]

Court of Appeals of Ohio,
Lake County.

No. 91–L–061.

Decided July 1, 1992.

*Steven C. LaTourette*, Prosecuting Attorney, and *Geoffrey W. Weaver*, Assistant Prosecuting Attorney, for appellee.

*James K. Farrell, Jr.*, for appellant.

JOSEPH E. MAHONEY, Judge.

Defendant-appellant, Scott H. Wolfe, was charged in an eight-count indictment with four counts of rape, in violation of R.C. 2907.02; one count of kidnapping, in violation of R.C. 2905.01; and three counts of gross sexual imposition, in violation of R.C. 2907.05, for sexually abusing his stepdaughter, Angela Petsche. Appellant pled not guilty to the charges and was subsequently tried before a jury of his peers.

The evidence at trial established that the alleged abuse occurred between November 1982 and November 1984. Angela was born on December 13, 1978 and, thus, was almost four years old in November 1982. At the time of the alleged abuse, Angela resided with her mother, Suzanne Wolfe, her sister, Michelle Petsche, her stepbrother, Michael Wolfe, and her stepfather, Scott Wolfe, appellant herein.

Angela testified that the abuse occurred during the weekdays when her sister was in school and her mother was at work and only her stepbrother and appellant were at home. The abuse did not occur on the weekends. Angela testified appellant would lock the stepbrother in a bedroom by jamming a book in the door and then force or carry her into the master bedroom. In the bedroom appellant disrobed the child victim and forced her to engage in oral, vaginal and anal sex. Appellant warned the child never to tell anyone and threatened that, if she did tell anyone, he would kill her and God would strike her down.

Angela first revealed the sexual abuse to a camp counselor in the summer of 1989, five years after the separation of appellant and Suzanne Wolfe. The camp counselor convinced Angela to tell her father, David Petsche, about the abuse. The father reported the abuse to the police and took Angela to the Rainbow Babies' and Children's Hospital, where she was physically examined by Dr. Jean Smelker and Dr. Harold Ray Fisher. Both of these doctors testified as experts at trial and both opined, based on their examinations, that Angela had been sexually abused.

The jury found appellant guilty on all counts as charged. The trial court sentenced appellant to concurrent life terms on rape counts one and two, and counts three and four, with count one and four to be served consecutively; five to twenty-five years on the kidnapping count to be served consecutive to the life sentences, and no sentence on the three counts of gross sexual imposition, which were determined to be allied offenses of similar import.

Appellant has filed a timely appeal and now presents six assignments of error.

## Assignment No. 1

"The trial court committed reversible error in not permitting a board certified pediatrician to testify regarding a physical examination and medical records concerning the examination performed by a pediatrician in his office which occurred during the alleged sexual abuse, the standards of the American Board of Pediatrics regarding a preschool examination and the areas of the anatomy required to be examined in a preschool physical."

■ Under the first assignment of error, appellant contends the court erred in allowing Dr. James Posch to assert the physician/patient privilege. This contention is without merit.

Posch was subpoenaed to bring the medical records of Angela's prekindergarten physical of July 1984. The examination was conducted by Posch's retired partner, Dr. James Lavrich. Posch appeared with the records and asserted the physician/patient privilege, pursuant to R.C. 2317.02. Appellant argues that the physician/patient privilege was voluntarily waived by Angela testifying and by having the medical doctor who was chosen by the state to examine Angela testify; that the privilege does not exist in criminal proceedings; and that the privilege was waived by R.C. 2151.421(A)(1), which requires a physician to report any condition that reasonably indicates abuse of a child to the county department of human services.

These arguments are not well taken.

The trial court did not perform an in camera review of the medical records but had Posch's attorney, Stephen T. Parisi, review the records to see if they contained any exculpatory information. Parisi represented to the court that Posch never performed a vaginal, genital, anal and/or urinary examination of Angela, and that the records did not specifically show that such an examination was performed. Thus, regardless of the privilege issues, Posch was not competent to testify regarding the examination performed by Lavrich. Evid.R. 602.

The first assignment of error is without merit.

## Assignment No. 2

"The trial court erred in failing to grant an overnight continuance to allow the defendant to secure the attendance of a medical doctor who examined the urinary, vaginal, and anal areas of the alleged victim during the period in which the alleged daily sexual and anal intercourse occurred."

■ In the second assignment of error, appellant contends the trial court improperly denied him a continuance so that he could present the testimony of Lavrich. This assignment of error is not well taken.

Appellant claims that he could not locate Lavrich prior to trial and was only able to obtain information of the whereabouts of Lavrich after Posch testified. Posch indicated that Lavrich lived in Richmond Heights and that his telephone number and address were readily available by calling Posch's office. Posch indicated through his counsel that the defense never asked for Lavrich's address or telephone number. If they had, Posch would have freely given it to them. Thus, there was some indication that had the defense been more diligent in their efforts to locate Lavrich, they could have done so prior to trial.

The record indicates that the defense had the trial continued from January 22, 1990 until March 4, 1991, either by obtaining a continuance or by disregarding the trial court's denial of a continuance and failing to appear for trial. The record further indicates that the defense filed a discovery response on December 4, 1990 wherein it listed both Posch and Lavrich as potential witnesses. Thus, appellant had plenty of time to locate Lavrich prior to the trial on March 4, 1991.

After Posch testified, defense counsel obtained the information regarding Lavrich and sent a special process server to serve a subpoena requiring Lavrich to appear the following day at 9:00 a.m.

Based on the information obtained during the *in camera* discussions surrounding Posch's assertion of the doctor/patient privilege and the contents of the medical records, the trial court stated:

"At best the testimony of Dr. Lavrich would be that at some point prior to kindergarten, there was a visual examination of the little girl, at best would indicate there was nothing visible vaginally or anally. That is the best testimony. If that is the best testimony, that is submission to wait for, we will allow him to testify if he shows up prior to the conclusion of our charging the conference. It is now about two minutes to two. The Defense is going to rest and if the doctor shows up prior to our coming back into court before argument, I will allow you to reopen and present that evidence but I am not going to wait until tomorrow morning."

Lavrich failed to appear and the court proceeded to final argument and the charging of the jury.

It is well settled that the decision whether to grant or deny a continuance is within the sound discretion of the trial court. Absent an abuse of that discretion, this court will not reverse the trial court. *State v. Sowders* (1983), 4 Ohio St.3d 143, 4 OBR 386, 447 N.E.2d 118; *State v. Unger* (1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 43, 423 N.E.2d 1078, 1080; *State v. Holdsworth* (Feb. 21, 1992), Portage App. No. 90–P–2231, unreported, 1992 WL 35040. Abuse of discretion connotes more than an error of law or judgment. It

implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157–158, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148–149. Based on the foregoing, we cannot conclude that the trial court abused its discretion in denying the continuance.

The second assignment of error is without merit.

### Assignment No. 3

"The trial court erred in not permitting additional questioning of a prospective juror and in failing to excuse the juror for cause."

■ In the third assignment of error, appellant argues that the trial court should have allowed the defense additional questioning of a juror and should have excused that juror for cause. This argument is without merit.

After the defense used its last peremptory challenge, the next juror requested a conference in chambers, where he revealed that he was a victim of child abuse and that he could understand why a child would take so long to report a molestation. The record shows that defense counsel was afforded considerable latitude in questioning the juror. The trial court denied defense counsel's request to remove the juror for cause. The court explained:

"[The juror] indicated that he has an understanding of why a child may not come forward. There is a premise. That premise is finding that the child was abused. I think he indicated that he is perfectly able to find that premise and certainly able to judge the credibility of all the parties equally in this case including the young lady who I assume is going to testify.

"I have had the opportunity in chambers up close to personally observe [the juror] and I questioned myself [*sic*] and by both counsel and I feel that he can be fair, unbiased and unprejudiced witness [*sic*] and will not let this former incident interfere with his judgment. So I will let him remain."

■ No prejudicial error can be assigned to the examination of prospective jurors absent a clear abuse of discretion. *State v. Durr* (1991), 58 Ohio St.3d 86, 568 N.E.2d 674; *State v. Ellis* (1918), 98 Ohio St. 21, 120 N.E. 218. Based on our review of the record, we conclude that the trial court determined that the juror could be fair and impartial and properly exercised its discretion in allowing the juror to remain. Furthermore, defense counsel was allowed to question the juror at length, and appellant does not show that the trial court improperly limited the defense counsel's inquiry or the appellant has been prejudiced in any way.

The third assignment of error is not well taken.

Assignment No. 4

"The trial court erred in overruling the motion of the defendant for an independent psychological and physical examination of the alleged victim."

■ Under the fourth assignment of error, appellant argues that he is entitled to an independent psychological and physical examination of the victim when the state utilizes a psychologist and a doctor to examine the child and to render opinions on sexual abuse. Appellant requested an independent psychological and physical examination of the victim, which the trial court denied.

In support of his argument, appellant relies on the concurring opinions in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220. In *Boston*, the court held at the syllabus:

"An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."

The concurring opinions agreed that a rule should be adopted which would allow the defendant to have his own expert or have a court-appointed expert examine the child and make a report to the court which would make such report available to both sides, the state and the defendant. This, however, was not the holding in *Boston* or "the proper subject of syllabus law." *Id.* at 131, 545 N.E.2d at 1242. The concurring justices did agree with the majority that such a rule is for the Ohio Supreme Court Advisory Committee and the General Assembly to establish.

Thus, under the holding of *Boston*, appellant is not entitled to have his own expert examine the child. Appellant's counsel admitted as much at trial when he conceded that under present law, appellant is not entitled to such examination.

The holding of *Boston* has been interpreted to preclude a defendant from offering expert opinion testimony to attack the child victim's veracity or to show that the child was susceptible to suggestion or influence and is lying. Just as *Boston* precludes an expert from testifying as to the veracity of the victim, so it also precludes expert testimony to attack the veracity or credibility of the victim. See *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899; *State v. Cantlebarry* (1990), 69 Ohio App.3d 216, 590 N.E.2d 342.

Based on the foregoing, we conclude that the trial court did not err in overruling appellant's motion. The fourth assignment of error is without merit.

### Assignment No. 5

"The trial court erred in allowing Dr. Jean Smelker to render an opinion regarding the alleged abuse."

In the fifth assignment of error, appellant argues the trial court erred in allowing Dr. Smelker to give her expert opinion that Angela was a sexually abused child.

Based on the child's behavior, the physical findings, which included a thickened rim on the hymen and a white line running down the posterior fourchette, and the history given by the child, Dr. Smelker opined that "I believe Angela presented as a sexually abused child." Appellant argues that this opinion is a non-opinion and does not assist the trier of fact but confuses the trier of fact. This argument is without merit.

In *Boston, supra,* the court set forth guidelines in dealing with sexual abuse cases. The court specifically held that in such cases expert testimony is perfectly proper, pursuant to Evid.R. 702, 703, 704, and 705, and such experts are not limited to persons with scientific or technical knowledge but include other persons who have acquired "specialized knowledge" through experience, training and education. *Id.,* 46 Ohio St.3d at 126, 545 N.E.2d at 1237. "[A]n expert's opinion testimony on whether there was sexual abuse would aid jurors in making their decision and is, therefore, admissible pursuant to Evid.R. 702 and 704." *Id.* at 128, 545 N.E.2d at 1239. However, an expert may not testify as to the expert's opinion regarding the veracity of the child's statements. *Id.* at 129, 545 N.E.2d at 1240.

Appellant does not argue that Dr. Smelker improperly testified as to the veracity of Angela's statement that appellant sexually abused her. Thus, it is clear that under the law as set forth in *Boston, supra,* Smelker's testimony was properly admitted. Furthermore, there is no evidence to support appellant's allegation that the jury was confused.

Accordingly, the fifth assignment of error is overruled.

### Assignment No. 6

"The trial court erred in not allowing the defendant to cross-examine the witnesses regarding abuse and neglect of the alleged victim by her mother."

In the sixth assignment of error, appellant argues that the trial court erred in not allowing him to cross-examine the child's father and the two experts regarding an affidavit the father filed in the domestic relations case in which custody of the abused child was in dispute. The father's affidavit alleged that Angela was physically, emotionally, and mentally abused and neglected by her mother.

In ruling on the state's motion *in limine*, the trial court warned appellant's counsel not to inquire into the domestic relations matters without the court's permission. However, the trial court indicated that it might allow examination regarding the affidavit if appellant could establish a sufficient "tie."

 Evid.R. 611(B) states:

"Cross-examination shall be permitted on all relevant matters and matters affecting credibility."

Relevant evidence is evidence which has a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The scope of the cross-examination is solely within the sound discretion of the trial court. *State v. Acre* (1983), 6 Ohio St.3d 140, 6 OBR 197, 451 N.E.2d 802; *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 24 O.O.3d 322, 436 N.E.2d 1008.

Appellant failed to establish, to the trial court's satisfaction, a sufficient "tie" or show that the domestic relations matter was relevant to the charges against the appellant and, thus, the trial court properly exercised its discretion in not permitting cross-examination on these matters which were not relevant.

The sixth assignment of error is without merit.

Based on the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed.*

EDWARD J. MAHONEY, J., concurs.

CHRISTLEY, P.J., dissents.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

CHRISTLEY, Presiding Judge, dissenting.

Upon reviewing the briefs and record in this case, I am constrained to conclude that the trial court committed four separate errors, each of which warrants the reversal of the court's judgment. Accordingly, I respectfully dissent from the decision of the majority.

In finding appellant's first assignment to be without merit, the majority holds that Posch was not competent to testify as to the pre-kindergarten examination because he had no personal knowledge of the matter. Although I would agree that Posch certainly could not testify as to what actually occurred during Lavrich's examination, he was competent to testify concerning the typical procedure followed in this type of examination. Moreover, Posch was qualified to give expert testimony concerning the meaning of any

relevant statements which *may* have been in the records, and to give general testimony as to the detection of sexual abuse of young children. Further, he could testify as to the existence of any duty owed by a physician to report suspected child abuse.

The majority emphasizes that Posch's counsel told the trial court that the records did not indicate whether Lavrich had actually examined the relevant areas of the child's anatomy in this instance. As the issue of whether the trial court properly relied upon counsel's representation was not raised, I will ignore it other than to comment that such a technique is not mentioned anywhere in the Rules of Evidence. It is my opinion that if it were established that there was a *duty* to check for signs of sexual abuse at that time, unless the records specifically showed that the genital area was *not* examined, appellant could have argued that the lack of any such record supported the conclusion that Lavrich did not find signs of abuse. While this would not have been conclusive, it would have been a very relevant piece of evidence for the jury to consider.

In concluding that Posch was competent to testify as to certain matters, I believe that appellant's arguments as to the physician/patient privilege should be addressed. For the following reasons, I also conclude that the trial court erred in excluding Posch's proposed testimony.

In arguing that the trial court erred in applying the privilege to exclude Posch's testimony, appellant has raised three arguments for consideration. First, appellant submits that as a general proposition, the physician/patient privilege does not apply in criminal proceedings.

To the contrary, Evid.R. 101(B) specifically provides that the rule governing privileges, Evid.R. 501, is applicable "at all stages of all actions, cases, and proceedings conducted under these rules." In addition, our Supreme Court has recently held that courts of this state "may not create a public policy limitation upon the physician-patient privilege in order to allow otherwise clearly inadmissible evidence to be received in drunk driving cases." *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672, first paragraph of the syllabus. While the court did not address the exact issue, the *Smorgala* decision supports the conclusion that the physician/patient privilege must be observed in a criminal case.

Next, appellant maintains that the proposed testimony should have been admitted into evidence because the child waived the privilege by testifying at trial. Historically, Ohio has recognized the rule that the act of voluntarily testifying constitutes a waiver of the privilege by the patient as to the specific topic of the testimony. See, *e.g.*, *Baker v. Indus. Comm.* (1939), 135 Ohio St. 491, 14 O.O. 392, 21 N.E.2d 593; *Ramey v. Mets* (1964), 3 Ohio App.2d 329, 32

O.O.2d 434, 210 N.E.2d 449; *Covington v. Sawyer* (1983), 9 Ohio App.3d 40, 9 OBR 43, 458 N.E.2d 465. This general rule has also been applied in the criminal context. *State v. Bowers* (Aug. 31, 1982), Jefferson App. No. 81-J-32, unreported, 1982 WL 6178.

However, in relation to this precedent, it should be noted that the majority of these courts relied upon specific statutory language concerning the effects of the testimony by the patient. See, *e.g., Baker, supra.* However, the current version of the statute governing the physician/patient privilege, R.C. 2317.02(B), does not contain similar language. This is in spite of the fact that R.C. 2317.02(A), which sets forth the attorney/client privilege, specifically provides that an attorney may be compelled to testify if the client testifies voluntarily. See, also, R.C. 2317.02(G)(1)(d).

Notwithstanding the absence of the traditional language in the new statute, some courts have continued to follow the old rule, and allowed a physician to testify if the patient has already done so. See *Garrett v. Jeep Corp.* (1991), 77 Ohio App.3d 402, 602 N.E.2d 691. From both a technical and a public policy perspective, this writer is unable to discern any reason why this particular waiver rule should not continue to be applied to the physician/patient privilege.

However, in light of the holding in *Smorgala, supra,* it is clear that the courts of this state must apply the physician/patient privilege as it is specifically set forth in the statute.[1] Accordingly, I conclude that as a general proposition, a patient does not waive the privilege simply by testifying at trial.

Nevertheless, as appellant correctly notes in the third part of his first assignment, the privilege statute does set forth a specific exception which is applicable in this instance. R.C. 2317.02(B)(1) provides that a physician can be compelled to testify if the patient was deemed to have waived the privilege under R.C. 2151.421. This latter statute states, *inter alia,* that if a physician becomes aware of any incidence of child abuse while acting in his professional capacity, he must immediately report his suspicions to the appropriate authorities. Section (A)(3) of the statute then provides that the patient will be deemed to have waived the testimonial privilege if (1) the patient is under eighteen years of age; (2) the physician knows or suspects that the patient has or will suffer any injury that indicates abuse or neglect; and (3) the

---

1. Evid.R. 501 states that the law of privileges "shall be governed by statute enacted by the General Assembly or by principles of common law as interpreted by the courts of this state in light of reason and experience." In *Smorgala,* the court held that it could not create a common-law exception to the physician/patient privilege because the legislature had enacted a specific provision on this area of the law. Thus, R.C. 2317.02(B) is controlling as to this issue.

physician/patient relationship did not arise from the patient's attempt to secure an abortion without notifying her parents. Apparently, this statute was in effect at the time of the examination as there was no issue raised on this point.

Obviously, the purpose of R.C. 2151.421 is to encourage physicians not only to report cases of possible abuse to the authorities, but also to be able to testify as to the report's basis in the subsequent trial. Typically, of course, the physician's testimony would be used by the state to establish that abuse had occurred.

However, there would seem to be no impediment to interpreting R.C. 2151.421 to also allow the physician to testify on behalf of the defendant, if the testimony is relevant to the specific charge. As to this point, I would note that R.C. 2317.02(B)(1)(c) provides that if the patient initiates any type of civil action, she is deemed to have waived the privilege for the purposes of that action. Under those circumstances, the physician would be able to testify for or against her.

While R.C. 2317.02(B)(1)(c) does not refer to criminal actions, R.C. 2151.421 should be interpreted in the same manner, *i.e.*, to allow the physician to testify on behalf of either the state or the defendant. As the charges are based upon allegations of physical abuse involving the child, it should follow that the privilege has been waived as to any physician who might have information pertaining to the facts of the case. Any other interpretation would be patently unfair to the defendant, and should be avoided when the statute does not specifically prohibit waiver.

In the case before this court, all three requirements of R.C. 2151.421(A)(3) were satisfied; as a result, I would conclude that the child had waived the privilege as to the medical records and Lavrich. Moreover, as noted above, Posch was clearly competent to testify as to certain matters concerning the examination. Accordingly, I find the first assignment to be well taken.

As to the second assignment, the majority holds that the trial court did not err in denying appellant's request for a continuance in order to secure the presence of Lavrich. This holding is based upon the fact that counsel had been dilatory in finding Lavrich prior to trial.

While I would agree that counsel's action appeared to be fairly casual, I, nevertheless, conclude that a short continuance to the next morning was warranted because the implications of the proposed evidence were simply too critical to ignore.

The charges in this case were based upon the allegation that appellant had sexually abused the child many times over a two-year period. If the medical

records or Lavrich's testimony indicated that a proper examination of the young child's genitals was done and no indications of abuse were found, the credibility of the child's statements would certainly be called into question. As to this point, I would emphasize that if such an examination was done by Lavrich, it would have been the only one conducted contemporaneously with the alleged abuse.

Certainly, any testimony which Lavrich might have given would not be conclusive as to the ultimate issues before the jury. However, his testimony could be very damaging potentially to the state's case. Under these circumstances, I conclude that appellant's request for a short continuance should have been granted. Thus, the second assignment also has merit.

Under his third assignment, appellant contends that the trial court erred in failing to excuse a juror who stated that he had been sexually abused as a child. In relation to this argument, the majority holds that the record supports the court's conclusion that the juror could be impartial and fair, notwithstanding the fact that the juror had stated that he could understand why the child would wait so long to tell someone of the alleged abuse.

As a general matter, I would agree that a trial court has the discretion to seat a juror who states that he will be able to render an impartial verdict. This is true even if the juror initially indicates that he may be biased toward the defendant or the state. See Crim.R. 24(B)(9).

Nevertheless, I feel that the instant juror should have been excused by the trial court because of the very specific and personal nature of his bias. Notwithstanding his later statement as to his ability to be fair and impartial, the juror's initial statement clearly indicated that he would be more apt to believe the child than would another individual who never had such an experience.

In this respect, this juror was inherently different from the jurors at issue in the other cited cases who had also been victims of crimes other than rape or abuse. Unlike crimes such as robbery, one of the primary issues in a sexual abuse case is the credibility of the victim's statement as to the occurrence of the alleged events. Did the event actually happen? An ability to comprehend and understand the "delay" factor in sex abuse cases is an appropriate topic about which an expert witness could educate lay people. Here a juror has indicated an "expertise" with this "delay" concept. In essence, he has admitted to having made a credibility assessment of the victim based on his experience. It would be very difficult for that juror, no matter how hard he might try, to limit his determination of the child's credibility to the trial evidence and *not* upon his own *specific* experience. The existence of such a preconceived standard of credibility is inherently unfair to the defendant.

In addition, this juror's inclusion in the jury also raises the spectre that his personal expertise and experience regarding the victim's credibility might have directly influenced other jurors during the deliberations. In this respect, appellant's right to a fair and impartial trial could well have been jeopardized. Thus, I conclude that the trial court abused its discretion in not excusing the juror in question.

In addition to the foregoing, I find it necessary to address a separate matter which appellant has not raised in his brief before this court. The testimony of the child at trial indicated that in order to conduct the alleged sexual abuse, appellant would take her into the master bedroom of the home. In my opinion, this evidence was not sufficient to establish that appellant committed the offenses of rape and kidnapping with a separate animus. Thus, I conclude that appellant's conviction for kidnapping should be reversed as plain error.

R.C. 2941.25(A) provides that if certain conduct of the defendant can be considered to constitute two or more allied offenses of similar import, he can only be convicted of one of the offenses. Section (B) of this statute then provides that where the defendant's actions result in two or more offenses of the same or similar kind, he can be convicted of each if he had a separate animus as to each.

In applying R.C. 2941.25(A), the Supreme Court has held that kidnapping is an offense of similar import to rape. *State v. Donald* (1979), 57 Ohio St.2d 73, 11 O.O.3d 242, 386 N.E.2d 1341. As to Section (B), the court has also delineated two "guidelines" for determining whether kidnapping and a second offense, such as rape, have been committed with a separate animus:

"(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independence of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

"(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus.

In *Logan,* prior to the rape, the defendant forced the victim to go with him down an alley, around a corner, and down a flight of steps. Finding that a separate animus had not existed for both offenses, the *Logan* court reversed the kidnapping conviction.

Along the same lines, this court has held that merely forcing the victim into the bedroom of her own apartment is not sufficient to demonstrate a separate animus for kidnapping and rape. *State v. Dotson* (Oct. 13, 1989), Lake App. No. 88-L-13-157, unreported, 1989 WL 120810. The court also emphasized that the duration of the restraint was not substantial.

As to the issue of a separate animus, I feel that the facts of this case are indistinguishable from those in *Dotson*. Moreover, like the *Dotson* court, I believe that appellant's conviction for both rape and kidnapping constitutes a "plain error" which this court should rule upon regardless of whether the issue was raised at the trial level. See *State v. Craft* (1977), 52 Ohio App.2d 1, 6 O.O.3d 1, 367 N.E.2d 1221.

For the foregoing reasons, I would reverse appellant's conviction for kidnapping. I would also reverse and remand the action for a new trial on the four counts of rape.