**Cite as** *State v. Lacey*, **2018-Ohio-4145**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2017-CA-63 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-96 |
| | : | |
| DAKOTA L. LACEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 25th day of October, 2018.

. . . . . . . . . . .

NATHANIEL R. LUKEN, Atty. Reg. No. 0087864, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

DAVID R. MILES, Atty. Reg. No. 0013841, 125 West Main Street, Suite 201, Fairborn, Ohio 45324
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, Dakota L. Lacey, appeals from his convictions on one count of rape, one count of gross sexual imposition, and one count of importuning. Raising three assignments of error, Lacey contends that the jury found him guilty of the three offenses in disregard of the manifest weight of the evidence; that the trial court erred by failing to sustain his motion for an independent medical examination of the victim; and that the trial court further erred by allowing the victim to be accompanied by a facility dog while testifying. We find that the jury's verdicts were not against the manifest weight of the evidence, and that the trial court did not err either by failing to sustain Lacey's motion for a medical examination of the victim, or by allowing the victim to testify with a facility dog. Therefore, Lacey's convictions are affirmed.

## I. Facts and Procedural History

{¶ 2} On February 27, 2017, a Greene County grand jury issued an indictment against Lacey charging him with rape of a person under 13 years of age, a first degree felony in violation of R.C. 2907.02(A)(1)(b); gross sexual imposition upon a person under 13 years of age, a third degree felony in violation of R.C. 2907.05(A)(4); and importuning a person under 13 years of age to engage in sexual activity, a third degree felony in violation of R.C. 2907.07(A). One person was the victim of the three offenses, all of which were committed on December 23, 2016.

{¶ 3} Lacey pleaded not guilty at his arraignment. On September 12, 2017, Lacey moved the trial court to order the victim to undergo an independent medical examination for infection with a sexually transmitted disease.[1] The court did not enter a decision on

---

[1] In their briefs, the parties refer to "the [h]erpes [s]implex [v]irus" but do not specify the type. Appellant's Br. 12;

Lacey's motion, effectively overruling it. On September 22, 2017, the State moved the court to allow the victim to testify with a facility dog. The court sustained the State's motion without discussion in an entry filed on September 25, 2017, roughly 90 minutes before Lacey's trial began.

{¶ 4} At the conclusion of the trial two days later, the jury found Lacey guilty as charged. Lacey appeared for sentencing on December 20, 2017, at which time the trial court sentenced him to serve **concurrent** terms of imprisonment of 10 years to life on the charge of rape; 5 years on the charge of gross sexual imposition; and 5 years on the charge of importuning, for an aggregate term of **10** years to life. As well, the court advised Lacey that he would be subject to postrelease control and indicated that he would be required to register as a Tier III sex offender. Lacey timely filed his notice of appeal on December 26, 2017.

## II. Analysis

{¶ 5} For his first assignment of error, Lacey contends that:

APPELLANT'S CONVICTIONS FOR RAPE, GROSS SEXUAL IMPOSITION AND IMPORTUNING ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 6} Lacey challenges the jury's verdicts, collectively, in three respects. Appellant's Br. 10-11. First, he observes that the State presented "no medical evidence corroborating" the victim's allegations that he engaged in sexual activity with her. *Id.* at 10. Second, he claims that the State failed to prove that he and the victim were ever

---

Appellee's Br. 14.

alone together on December 23, 2016. *Id.* Third, he implies that the jury ignored or overlooked evidence indicating that the victim fabricated her allegations against him. *See id.* at 10-11.

**{¶ 7}** In a challenge based on the weight of the evidence, an "appellate court acts as a 'thirteenth juror.' " *State v. Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 49 (2d Dist.), quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Accordingly, the appellate court must review the record; weigh the evidence and all reasonable inferences; consider the credibility of witnesses; and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting a new trial. *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. The appellate court "may determine which of several competing inferences suggested by the evidence should be preferred," although it "must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." (Citation omitted.) *State v. Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, ¶ 5. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against [a] conviction.' " *Hill* at ¶ 8, quoting *Martin* at 175.

**{¶ 8}** Lacey argues, first, that the jury clearly lost its way by finding him guilty absent any evidence of physical injury to the victim. *See* Appellant's Br. 10. On December 27, 2016, the victim filed a report with the Fairborn Police Department, after which a physician employed by Dayton Children's Hospital performed a physical

examination.   Trial Tr. 215:8-218:15 and 448:2-454:16.   The physician, whom Lacey called as one of his witnesses, determined the victim's condition to be "normal" at that time, finding "no signs of any injury."   *Id.* at 450:6-450:12.

**{¶ 9}** Whether signs of physical injury sustained by the victim on December 23, 2016, would have remained to be discovered four days later is not ascertainable from the record; neither Lacey nor the State asked the physician about the effect, if any, that the passage of time might have had on the results of the victim's examination.   *Id.* at 446:11-460:12.   The physician, regardless, also testified that in comparable cases, the absence of signs of physical injury is "not unusual at all," whereas the presence of signs of physical injury is unusual.   *Id.* at 457:13-457:23.   Given this testimony from Lacey's own expert witness, we cannot conclude that the jury clearly lost its way by finding Lacey guilty despite the lack of evidence of physical injury to the victim.

**{¶ 10}** In the second part of his argument, Lacey asserts that there was "no corroboration * * * that [the victim] and [he] were ever alone" together on December 23, 2016.   Appellant's Br. 10.   Lacey appears to base his assertion largely on a statement the victim made to a detective with the Fairborn Police Department, in which the victim reported that Lacey had initiated sexual activity with her on December 23, 2016, at approximately six o'clock in the evening.   *See* Trial Tr. 179:12-179:18, 264:8-264:23 and 268:21-269:15.

**{¶ 11}** Superficially, the record lends some support to Lacey's argument.   A number of witnesses, including Lacey and the victim herself, provided testimony detailing their respective movements on the day in question, and their cumulative testimony suggests the following sequence of events:

1. Before or shortly after 10:00 a.m., the victim accompanied Lacey on a work assignment (Lacey was employed as a tow-truck operator in December 2016). They returned to Lacey's house at the conclusion of the assignment, perhaps as late as 11:00 a.m.[2]

2. At or around the same time, Lacey's mother arrived to launder her clothes. She remained for roughly 30 minutes, during which Lacey took another assignment, and left once Lacey returned.

3. Shortly afterward, Lacey brought the victim to the nearby home of his adult cousin, where the victim waited while Lacey completed a third assignment.[3] Roughly one hour later, Lacey and the victim returned to Lacey's house.

4. At approximately 12:00 p.m., Lacey's cousin finished work for the day and drove from her place of employment to Lacey's house, arriving between 12:30 and 1:00 p.m.

5. At approximately 1:00 p.m., Lacey's fiancée arrived home after work.

6. Lacey and one or more other persons, including the victim, then consumed marijuana, and Lacey's fiancée cooked a pizza.

7. After eating, Lacey and his fiancée had an argument over money for Christmas shopping. Lacey's fiancée became upset and left the house, taking Lacey's child with her.

---

[2] The victim had been an overnight guest at Lacey's house since December 18, 2016. Trial Tr. 188:1-188:5 and 395:14-395:20.

[3] The victim testified in passing that Lacey's cousin was at home when Lacey dropped her off, though she subsequently seemed to testify that Lacey's cousin was not there at that point. Trial Tr. 195:3-195:15 and 264:8-266:14.

8. At approximately 3:00 p.m., Lacey's cousin left.

9. Between 3:30 and 3:45 p.m., Lacey's mother returned to the house to finish her laundry. Before 5:00 p.m., Lacey's fiancée returned.

10. Between 5:00 and 5:20 p.m., Lacey left to visit his cousin, and his mother went home.

11. At approximately 5:30 p.m., Lacey's fiancée, along with the victim and Lacey's child, traveled to Fairfield Commons to shop.[4] On their way, Lacey's fiancée stopped at the house of one of Lacey's co-workers to drop off Christmas gifts, arriving between 5:30 and 5:45 p.m. While the victim and Lacey's child waited outside, Lacey's fiancée entered the house to deliver the gifts to the co-worker's wife. Lacey's fiancée left her cellular telephone in her car.

12. At or around 6:09 p.m., Lacey called his fiancée. The victim entered the house to tell Lacey's fiancée that she was receiving a call.

13. Between 6:30 and 6:40 p.m., or perhaps somewhat earlier, Lacey's fiancée, the victim and Lacey's child left for Fairfield Commons.

14. Between 7:00 and 7:30 p.m., Lacey arrived at his cousin's house.

15. At approximately 8:16 p.m., the victim sent Lacey a text message, apparently while shopping at Fairfield Commons. Between 8:16 p.m. and 9:30 p.m., Lacey's fiancée, the victim and Lacey's child returned to Lacey's house.

16. At approximately 9:30 p.m., the victim's mother and stepfather arrived to pick up the victim.

---

[4] Lacey had only one child at the time. *See* Trial Tr. 336:12-336:24.

*See id.* at 195:3-199:18, 207:18-208:25, 258:8-259:10, 264:8-266:18, 268:21-269:15, 335:19-336:24, 338:7-343:5, 349:14-356:20, 372:1-374:7, 376:23-379:14, 385:3-385:22, 386:10-386:12, 395:14-399:10, 400:7-405:4 and 435:14-438:20.

{¶ 12} The victim's statement that Lacey initiated sexual activity at or around six o'clock in the evening is difficult to reconcile with the foregoing chronology in two significant respects: (1) Lacey's fiancée testified that she, the victim and Lacey's child did not return to Lacey's house between the time that they left to drop off Christmas gifts at the residence of Lacey's co-worker, and the time that they arrived at Fairfield Commons; and (2) the victim testified that she had never been to the co-worker's house.[5] *See id.* at 269:16-270:10 and 354:1-354:15. In its brief, the State argues, by implication, that Lacey, his fiancée and his co-worker's wife did not testify truthfully about the timing of events between 5:00 p.m. and 7:30 p.m., thereby explaining the apparent conflict. Appellee's Br. 12-13.

{¶ 13} Yet, the record also supports an alternative explanation: the victim was simply mistaken about the time that the sexual activity occurred. If Lacey initiated sexual activity with the victim at approximately three o'clock in the afternoon, then the testimony given by Lacey, his fiancée, his mother, his cousin and his co-worker's wife regarding the sequence of events on December 23, 2016, largely matches the corresponding testimony given by the victim herself. The victim, in fact, testified that she was alone with Lacey at approximately 3:00 p.m. that day, once Lacey's cousin went home, and Lacey's cousin

---

[5] Of note, the victim testified that she knew Lacey's co-worker, but not the co-worker's wife. Trial Tr. 269:16-269:17. Lacey's fiancée and the co-worker's wife make no reference to the presence of Lacey's co-worker at the house when Lacey's fiancée arrived to deliver gifts. *Id.* at 351:25-353:12 and 436:6-440:12. Assuming that Lacey's co-worker was elsewhere at the time, the victim might have not known that Lacey's fiancée had taken her to the co-worker's house.

testified that when she left Lacey's house, Lacey's fiancée was not there.[6] Trial Tr. 198:7-199:18 and 377:11-378:21. Furthermore, the victim had not only consumed marijuana throughout that same afternoon, but was also taking prescription anti-depressants. *See id.* at 196:19-200:5, 241:21-243:16 and 256:19-257:15.

{¶ 14} This alternative explanation resolves nearly all conflicts with respect to the sequence of events on December 23, 2016, with one notable exception. Lacey's mother testified that when she arrived at Lacey's house between 3:30 and 3:45 p.m. to finish her laundry, Lacey's cousin had "just pulled away," by which she seems to have meant that she saw Lacey's cousin driving away from Lacey's house. *See id.* at 372:4-372:17. Even so, Lacey's cousin testified that she left at 3:00 p.m., which conflicts with the testimony of Lacey's mother but accords with the victim's testimony. Regardless, Lacey's mother was not asked to elaborate on this aspect of her testimony, leaving the possibility—among others—that she had merely seen a vehicle resembling that which she associated with Lacey's cousin. *See id.* at 372:8-375:21.

{¶ 15} If the jury concluded that Lacey's sexual activity with the victim occurred at 6:00 p.m., then it presumably did not fully credit the conflicting testimony of Lacey, Lacey's fiancée and the wife of Lacey's co-worker. Alternatively, the jury might have considered the various witnesses' accounts of events and concluded that the sexual activity occurred earlier in the day. We are obligated to "defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses." *Cochran*, 2d Dist. Montgomery No. 27023, 2017-Ohio-216, at ¶ 5. Because the evidence presented to the

---

[6] Lacey's cousin stated that she "believe[d]" that Lacey's child was still in the house, as well. Trial Tr. 377:18-378:23.

jury could reasonably be construed to support either of these conclusions—depending in part on the jury's decisions concerning the witnesses' credibility—we hold that the jury did not clearly lose its way in finding Lacey guilty despite the uncertainty regarding the exact time at which the sexual activity occurred.

{¶ 16} In the third part of his argument, Lacey posits that the jury overlooked evidence suggesting that the victim fabricated her allegations against him. Appellant's Br. 10-11. The jury, however, also received evidence in the form of testimony from the victim's mother and the victim's aunt establishing that the victim's typical behavioral patterns were disrupted in the days following December 23, 2016, as well as the recording of a telephone conversation between the victim and Lacey that was monitored by members of the Fairborn Police Department. Trial Tr. 220:8-221:15, 295:21-296:6, 305:20-306:11 and 422:21-429:14. During his monitored conversation with the victim, Lacey made several statements in which he seemed to acknowledge his guilt. *See id.* at 422:21-429:14. Inasmuch as the jury's evaluation of this evidence was essentially an assessment of the witnesses' credibility, we hold that the jury did not clearly lose its way by finding Lacey guilty.

{¶ 17} Although the State did not present evidence that the victim suffered physical injury, Lacey's own expert testified that medical examinations typically do not result in the discovery of signs of physical injury in comparable cases. The evidence, moreover, supported a determination that Lacey had an opportunity to commit the offenses for which he was convicted, and we must defer to the jury's decision to credit the victim's testimony over that of Lacey himself. For all of the foregoing reasons, Lacey's first assignment of error is overruled.

{¶ 18} For his second assignment of error, Lacey contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR INDEPENDENT TESTING TO DETERMINE WHETHER [THE] MINOR CHILD [SIC] HAD BEEN INFECTED WITH HERPES SIMPLEX VIRUS.

{¶ 19} On September 12, 2017, Lacey filed a motion in which he requested that the trial court order the victim to undergo an independent medical examination for infection with herpes simplex virus. The court never entered a formal decision in response, thereby overruling the motion by default. Lacey argues that the court erred by overruling the motion.

{¶ 20} We find that the trial court did not err by overruling the motion under the circumstances of this case. *See e.g., State v. Giles*, 8th Dist. Cuyahoga No. 65731, 1994 WL 372330, *8 (July 14, 1994); *State v. Wolfe*, 81 Ohio App.3d 624, 630, 611 N.E.2d 976 (11th Dist.1992), citing *State v. Boston*, 46 Ohio St.3d 108, 131, 545 N.E.2d 1220 (1989). In *Wolfe*, the Eleventh District Court of Appeals found that, in accordance with the Ohio Supreme Court's holding in *Boston*, a defendant may not offer "expert opinion testimony to attack [a] child victim's veracity or to show that the child was susceptible to suggestion or influence and is lying." *Wolfe* at 630. Here, Lacey sought to have the victim tested for infection with herpes simplex virus in an attempt to contest the veracity of the victim's allegations—or, in his words, to assist the jury in its "search for the truth." *See* Appellant's Br. 13.

{¶ 21} Lacey's fiancée testified that she and Lacey are infected with the virus, and in his brief, Lacey argues that if the victim had tested positive for infection with the virus,

then the result would have been "outcome determinative," or in other words, proved Lacey's guilt. Trial Tr. 357:22-358:15; *see* Appellant's Br. 13. A negative result, on the other hand, would not necessarily have assisted the jury in its "search for the truth" because, as the State's expert witness testified, "there are numerous cases" in which persons are exposed to the virus but do not become infected. Trial Tr. 466:10-467:9. Thus, irrespective of whether a positive result would have proven Lacey's guilt, a negative result would have unfairly influenced the jury's perception of the victim's credibility.

{¶ 22} Lacey's citation to the opinion of the First District Court of Appeals in *State v. Hill*, 59 Ohio App.3d 31, 570 N.E.2d 1138 (1st Dist.1989), is inapposite; in *Hill*, the First District considered a trial court's ruling on a motion for paternity testing pursuant to R.C. 2317.47 for the purpose of determining the identity of an alleged rapist. *Hill* at 32; Appellant's Br. 13. By contrast, the examination sought by Lacey in the instant matter was not authorized by any provision of the Revised Code. Lacey's second assignment of error is overruled.

{¶ 23} For his third assignment of error, Lacey contends that:

THE TRIAL COURT ERRED IN GRANTING [THE] STATE'S MOTION TO UTILIZE [A] FACILITY DOG IN COURT.

{¶ 24} Finally, Lacey argues that the trial court erred by sustaining the State's motion to allow the victim to testify with a facility dog. Lacey insists that the dog's presence invested the victim's testimony with greater credibility than it would have had otherwise, and he criticizes the trial court for ruling on the motion without analysis and without allowing him an opportunity to respond. Appellant's Br. 14-15. Lacey did not object at trial to the use of the dog, so we review only for plain error. *See State v.*

*Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶ 25} Apart from "plain error," an appellate court " ' "will not consider any error * * * not call[ed] to the trial court's attention at a time when [the] error could have been avoided or corrected." ' " (Citation omitted.) *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15-16, quoting *State v. Awan*, 22 Ohio St.3d 120, 122, 489 N.E.2d 277 (1986), quoting *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. By the plain-error standard, reversal is warranted only if "the outcome of the trial would clearly have been different" but for the alleged error. *See Waddell* at 166.

{¶ 26} The State remarks in its brief that "the record is not clear [whether] the facility dog was even used." Appellee's Br. 18. Although the trial court introduced the dog and his handler to the prospective jurors at the beginning of voir dire, the record includes no further mention of the dog. See Trial Tr. 7:12-7:19 and 182:24-292:15. In the absence of any definitive indication, we presume that the dog was present with the victim while she testified.

{¶ 27} On review, we find no basis on which to conclude that the use of the facility dog affected the outcome of Lacey's trial. The fact that the only reference to the dog was made during voir dire suggests that the dog's behavior during the trial had no noticeable impact on the proceedings, and without evidence to the contrary, Lacey cannot show that the result of the trial would have been different had the trial court overruled the State's motion for permission to use the dog. In addition, the use of facility dogs in similar cases has been approved by Ohio courts and by courts in other states. *See, e.g., State v. Hasenyager*, 2016-Ohio-3540, 67 N.E.3d 132, ¶ 7-12 (9th Dist.), *appeal not accepted*,

147 Ohio St.3d 1474, 2016-Ohio-8438, 65 N.E.3d 778; *State v. Millis*, 242 Ariz. 33, 391 P.3d 1225, ¶ 27-33 (2017); *State v. Reyes*, 505 S.W.3d 890, 895-898 (Tenn.Crim.App.2016); *People v. Chenault*, 227 Cal.App.4th 1503, 1514-1523, 175 Cal.Rptr.3d 1 (2014). Lacey's third assignment of error is overruled.

### III. Conclusion

{¶ 28} We find that the jury's verdicts were not against the manifest weight of the evidence, and further, we find that the trial court did not err either by failing to sustain Lacey's motion for a medical examination of the victim, or by allowing the victim to testify with a facility dog. Therefore, Lacey's convictions are affirmed.

. . . . . . . . . . . .

WELBAUM, P.J., concurs.

FROELICH, J., concurs in judgment only.

Copies mailed to:

Nathaniel R. Luken
David R. Miles
Hon. Stephen Wolaver